**HOLLYHOCK FARMS, INC. et, Plaintiffs, v. SCHOENLAUB et, Defendants.**

Common Pleas Court, Hamilton County.

No. A-170386.   Decided July 30, 1959.

Nichols, Wood, Marx & Ginter, for plaintiffs.
W. Charles Sulau, John A. Benjamin, for defendants.

## OPINION

By RENNER, J.:

Plaintiffs in this action are asking the Court for a declaratory judgment determining the rights of the respective parties to this action and for an order preventing the defendants from moving a house from another location to a lot on the north side of Christopal Drive in Hollyhock Subdivision owned by the defendants.  They also ask the Court for an order requiring the defendants to remove a garage which the defendants have already placed upon their lot.

The individual plaintiffs are the owners of residences in which they

reside on Christopal Drive in said subdivision. The plaintiff, Hollyhock Farms, Inc., together with Mariana H. and Rudolph G. Schneidhorst, who then were the owners of the adjoining tracts of land, in the year 1949 laid out Hollyhock Subdivision, located in Springfield Township, Hamilton County, Ohio, and, on August 30, 1949, they entered into a written agreement to restrict the use of the lots in said subdivision for the benefit of themselves, their heirs, executors, administrators, successors and assigns and all future owners of any of the lots in the subdivision. This agreement recorded in Deed Book 2374, page 409, together with the proposed plat of such subdivision, recorded in 1949 in Plat Book 52, pages 20 and 21 in the Hamilton County Recorder's Office, are both in evidence. The Schoenlaub lot was conveyed to them by deed dated October 31, 1958, which deed included a reference to restrictions and easements of record.

The petition alleges that all of the individual plaintiffs and others have erected residences in Hollyhock Subdivision comparable in value and design with other structures on the lots fronting on Compton Road in said subdivision and that the plans were submitted for approval as required in said agreement between the Schneidhorsts and Hollyhock Farms, Inc. The plaintiffs further allege that the defendants intend to move a house upon their lot, and that the defendants have already moved a garage on their lot in violation of the restrictions, by reason of which the plaintiffs and others similarly situated will suffer irreparable damage for which they have no adequate remedy at law.

For their first defense the defendants allege that the improvements which they propose to erect on the lot in Hollyhock Subdivision are comparable with other improvements on Compton Road as specified in the subdivision restrictions; that such improvements satisfy all the restrictions of the plat of said subdivision and that the plaintiffs refusal to approve their plans for the improvement of their property is arbitrary and unreasonable.

For a second defense they reiterate the allegations contained in the first defense and further state that plaintiffs have permitted the erection of other structures in the subdivision which are not comparable with the other improvements on Compton Road; that the restrictions are not part of a general plan of the subdivision and, further, that the plaintiffs have waived their right to enforce this restriction against the defendants and are thereby estopped from denying approval of defendants' plans.

Further answering, defendants deny each and every other allegation in the petition and pray for the dismissal of plaintiffs' petition.

The following material parts of the August 30, 1949, agreement provide as follows:

"Parcels A, B, C, D, E, F, and G shall be used for residence purposes only; no building other than one single family residence, together with a garage for not more than two cars, shall be erected or re-erected on any of said parcels.

"Parcels H, J, and K, 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12 shall be used for residence purposes only or for church purposes, and any improvements erected or re-erected on said parcels shall be used for church

purposes or shall be single family residences, or two family residences with a garage or garages for not more than two cars on each lot.

"All improvements erected or re-erected on the lots designated in the preceding two paragraphs must be comparable with the other structures erected on the second party's lots fronting on Compton Road in the immediate vicinity.

"The following restrictions shall apply to parcels A, B, C, D, E, F, G, H, J and K, and parcels 1 to 25, both inclusive, to-wit:

"Plans for any improvements erected or re-erected on said parcels must be approved by Hollyhock Farms, Inc. or Mariana H. Schneidhorst or Rudolph G. Schneidhorst. All improvements erected or re-erected on any of the aforesaid parcels must be comparable with other improvements on the Compton Road parcels."

The lot owned by the defendants and all of the individual plaintiffs are located on Christopal Drive, which runs generally east and west one square south of Compton Road, which also runs in the same general direction.

Plaintiffs' petition does not allege in what respects the residence which the defendants intend to move onto their lot in the subdivision would violate the restrictions. Counsel for the plaintiffs, however, contend that because the defendants home is not of the Early American or Colonial design or style of architecture it is not comparable to the homes on Compton Road and it does not conform to the homes which are now on the other lots in the subdivision.

Defendant contend that the language of the restriction does not suggest that homes to be placed upon the lots in the subdivision must conform to the Early American or Colonial style of architecture and that it contains no architectural standard, criteria or limitations regulating the scope of approval.

The rights of the plaintiffs and the defendants, therefore depend upon the meaning of the words "comparable with the other structures on the lots fronting on Compton Road in the immediate vicinity."

Counsel for the plaintiffs and defendants each offered in evidence photographs of a number of residences in the subdivision, including those on Compton Road, which were built prior to August 30, 1949. Photographs of defendants' home is in evidence, marked Exhibit 8, and it is also included in the group, marked as Exhibit 9.

In addition to the photographic evidence of all the homes and the surroundings in the subdivision the Court visited the subdivision to view it and the homes located on the lots. The visit to the home was at the request of counsel for both parties and it was stipulated between them that what the Court observed was to be considered as evidence in the case and not alone for the purpose of better applying the evidence presented in the court room.

To support their contention plaintiffs presented as a witness, Roy M. Ayers. Mr. Ayers was the secretary of Hollyhock Farms, Inc., and as such he signed the August 30, 1949 agreement. He further testified that he alone approved all of the houses which now are erected in the Hollyhock Subdivision, as the representative of Hollyhock Farms, Inc., and that he was one of the three authorized to approve plans and that it

was he who rejected the plans of the defendants' home when it was submitted to him for approval.

The plaintiffs called an architect, Mr. Harry J. Bothwell, to testify in their behalf as to the styles and type of architecture of the homes in the subdivision. Likewise, the defendants called Arthur J. Dohme, an architect, to testify in their behalf concerning the styles and types of architecture which were contained in certain of the homes in the subdivision.

After consideration of all of the evidence in the case, the Court reaches the conclusion that:

Hollyhock Subdivision is made up of a group of very desirable homes, located in a community of similar better class homes; that a number of the homes in the subdivision, in addition to those on Compton Road referred to in the agreement of August 30, 1949, are of the Early American or Colonial styles or pattern of architecture; that a number of other homes in the subdivision, especially the Auyers, Cronin, McKnight, Bishoff and Nelson homes are not of the Early American or Colonial architectural design or pattern and that the five last mentioned homes refute the contention of the plaintiffs that the agreement was intended to restrict the subdivision to the Early American or Colonial type of architecture or any other particular design or pattern, and that the restrictions are vague and indefinite.

In **Exchange Realty v. Bird, 16 Abs 391,** cited by plaintiffs and defendants, headnote 4, reads as follows:

"The primary rule of interpretation of restrictive covenants is to gather the intention of the parties not from a single clause in the restriction but from the entire context, and where the meaning is doubtful, consideration must be given to all the surrounding circumstances at the time the contract was executed but the restrictions will not be extended by implication."

The field of inquiry is not limited to the time of the execution of the agreement but includes the circumstances and the acts of the parties subsequent to its execution.

3 O. C. C. (N. S.) 428, Nat'l Bank v. Garn; **11 O. Jur. (2d), page 406, sec. 160; 11 O. Jur. (2d), page 410, sec. 162.**

"The general rule, with respect to construing agreements restricting the use of real estate, is that such agreements are strictly construed against limitations upon such use, and that all doubts should be resolved against a possible construction thereof which would increase the restriction upon the use of such real estate." **169 Oh St 325, syl. 1, Bove v. Giebel.**

**163 Oh St 581, 57 O. O., syl. 2, Loblaw v. W. Plaza;** see also:

**90 Oh St 280, Hunt v. Held, syl. 1; 104 Oh St 292, Frederick v. Hay; 106 Oh Ap 95, 6 O. O. (2d), 361, Carranor v. Driscoll; 33 Oh Ap 432, Goodyear Heights Realty v. Furry; 16 Abs 391, Exchange Realty Co., v. Bird.**

"A restrictive covenant in a deed which requires the submission to and approval by the grantor of all plans for the erection of a house, but fails to define the standards to be applied or the scope of the inquiry to be made, is too vague to be enforceable." **15 O. Jur. (2nd), p. 104.**

The Court finds that the restrictions contained in the August 30, 1949, agreement are void and of no effect as against the defendants and that the prayer of the plaintiffs' petition that they be allowed and adjudged to prohibit the moving of the house of the defendants upon Lot II of the proposed Hollyhock Farm Subdivision, and that the defendants be compelled to remove their garage from said lot should be denied.

Please present a judgment entry accordingly.