**Robert YORK et ux., Appellants,**

v.

**Charles V. HOWARD et al., Appellees.**

No. 5414.

Court of Civil Appeals of Texas,
Waco.

March 27, 1975.

Rehearing Denied April 17, 1975.

Everett & Law, Jim Law, Dallas, for appellants.

May, Troy & Block, Mark A. Troy, Jr., Kenneth A. Herridge, Dallas, for appellees.

HALL, Justice.

This suit was brought to enjoin the defendants from asserted violations of deed restrictions which allegedly govern the construction of a residential dwelling on the defendants' property. Trial without a jury resulted in judgment for the plaintiffs. We affirm.

Two of the plaintiffs are C. D. Ragland and wife, Lorene Ragland. They are the common source of title to all of the prop-

erty affected by the restrictions in question. They now own only one acre in an original tract of 30 acres with which we are concerned, located in the William Lyons Survey in Dallas County. The other 29 acres have been sold by them from time to time by way of individual grants of one to 6½ acres in size to various purchasers, including the plaintiffs or their predecessors in title. All of the deeds of conveyance from the Raglands contained these restrictions:

"It is understood and agreed to by Grantor herein and Grantees herein that no old house may be moved onto the tract of land herein conveyed, and only new construction of a masonry type may be used for a one-family dwelling with a minimum of 1600 square feet of living area. This does not restrict other outbuildings to masonry type construction and only the residence must be of masonry construction as above-mentioned."

One tract out of the 30 acres was conveyed by them on December 1, 1966, to Jesse D. Cason, Jr.; and another was conveyed by them on December 1, 1966, to William T. Hendry, Jr., and wife. These tracts adjoined. On December 27, 1973, Cason conveyed his tract to defendants. The Cason deed contained this stipulation:

"The conveyance evidenced by this deed is made subject to any and all easements, restrictions, covenants, conditions, and reservations of record, if any, applicable to the herein conveyed property or any part thereof."

And, on January 9, 1974, Mr. and Mrs. Hendry conveyed their tract to defendants. This deed contained no reference to the restrictions. The defendants intend to use the Cason-Hendry lots as a single tract for their residence.

In April, 1974, defendants moved a frame house onto their lot and began preparation to attach it to a foundation. This house contains less than 1,000 square feet of living area. It was defendants' former residence. Defendants' asserted reason for moving the house onto the property is to save construction costs through the continued use of the built-in appliances, air-conditioning and carpeting in the house, which they say have only been used since 1970, and by taking advantage of the seasoned lumber in it. They intend to remove the roof of the house to the ceiling; add new construction which will include a master bedroom and bath, three closets, kitchen, dining area, and a three-car garage; remove and re-size some windows to blend with the new construction; and brick veneer the exterior walls to the top of the windows. When completed, the living area would exceed 1600 square feet.

Plaintiffs based this suit upon the restrictive covenant in defendants' and plaintiffs' chain of title. The court enjoined defendants from using the frame house in the construction of a residence on the property in question, ordered them to remove it, and permanently enjoined them "from moving any other old house onto their property in the William Lyons Survey intended to be utilized as a residence dwelling and from constructing any building of any kind or character on such property intended to be used as a residence dwelling which is not of new construction of masonry type for a one family dwelling having a minimum of 1600 square feet of living area."

Findings of fact and conclusions of law were not requested by the parties. However, in the judgment, after concluding that the restrictions in question apply to defendants' property, the court made findings, among others, that a general plan or scheme has been adopted with reference to all 29 acres conveyed by the Raglands designed to make the property more attractive for residential purposes; that the house the defendants moved onto their property is "an old house," and "is not of new construction," and "contains less than 1600 square feet of living area"; and that

the defendants' violation of the restrictive covenant will cause the plaintiffs irreparable injury.

■ It is the settled rule in this state that where the owner of a tract of land subdivides it and sells distinct parcels thereof to separate grantees, imposing restrictions upon its use pursuant to a general scheme or plan of development or improvement, such restrictions may be enforced by any grantee against any other grantee upon the theory that there is a mutuality of covenant and consideration, and that mutual negative equitable easements are created. Pardo v. Southhampton Civic Club, (Tex.Civ.App.—Galveston, 1951, writ ref.) 239 S.W.2d 141, 143. A more definitive, frequently cited, statement of the rules which govern covenants of the character of those in the case at bar is set forth in Hooper v. Lottman, (Tex.Civ.App.—El Paso, 1914, no writ hist.) 171 S.W. 270, 272, as follows:

"The most familiar cases in which courts of equity have upheld the right of owners of land to enforce covenants to which they were not parties are those in which it has appeared that a general building scheme or plan for the development of a tract of land has been adopted, designed to make it more attractive for residential purposes by reason of certain restrictions to be imposed on each of the separate lots sold. This forms an inducement to each purchaser to buy, and it may be assumed that he pays an enhanced price for the property purchased. The agreement therefore enters into and becomes a part of the consideration. The buyer submits to a burden upon his own land because of the fact that a like burden imposed on his neighbor's lot will be beneficial to both lots. The covenant or agreement between the original owner and each purchaser is therefore mutual. The equity in this particular class of action is dependent as much on the existence of the general scheme of improvement or development as on the covenant, and restrictions which contemplate a general building plan for the common benefit of purchasers of lots are recognized and enforced by courts of equity at the instance of the original grantor or subsequent purchasers. So the general rule may be safely stated to be that where there is a general plan or scheme adopted by the owner of a tract, for the development and improvement of the property by which it is divided into streets and lots, and which contemplates a restriction as to the uses to which lots may be put, or the character and location of improvements thereon, to be secured by a covenant embodying the restriction to be inserted in the deeds to purchasers, and it appears from the language of the deed itself, construed in the light of the surrounding circumstances, that such covenants are intended for the benefit of all the lands, and that each purchaser is to be subject thereto, and to have the benefit thereof, and such covenants are inserted in all the deeds for lots sold in pursuance of the plan, a purchaser and his assigns may enforce the covenant against any other purchaser, and his assigns, if he has bought with actual or constructive knowledge of the scheme, and the covenant was part of the subject-matter of his purchase."

■ The rules set out in the *Hooper* case were cited as "the correct rules" by our Supreme Court in Curlee v. Walker, 112 Tex. 40, 244 S.W. 497, 498 (1922). Defendants say these rules have no application here, asserting that there is no evidence in this case to support the finding of a general plan or scheme of development of the property of the parties; and that, in any event, there is no showing that any such plan has been implemented. We overrule these contentions.

Mrs. Ragland testified that she and Mr. Ragland had in mind a uniform development for the 29 acres in question, and that this was their reason for including the re-

strictions in the deeds; and that the restrictions were the same in all of the deeds. She said, "we decided on that before we sold any of the 29 acres that we restricted. We decided ourselves. We had been in that community always and the land had been in the family down through the generations. We decided that we would like to see nice homes go up there and if we put a deed restriction there that it would draw better, high class, people, and naturally we were interested in the community as well as having the place look nice." She stated that the property has developed with nice houses "like we had hoped it would." There is testimony from other plaintiffs that they bought in reliance upon the restrictions, and that the homes they have constructed on their lots comply with the restrictions. Before the frame house was moved onto the property, defendants were fully warned by plaintiffs by letter that such action would result in this suit. The plaintiffs steadfastly objected throughout the trial to defendants' moving the house on the property, asserting it is a violation of the restrictions and will result in the lowering of their property values. Mr. York admitted actual knowledge of the restrictions in the Ragland-Cason deed at the time of his purchase from Mr. Cason. And though he said that he "is not sure" that he knew of the restrictions in the Ragland-Hendry deed, he testified that he required in his contract of purchase from the Hendrys that if anyone objected to his moving the house onto the property then "the deal was off."

This evidence is legally sufficient to support findings that the restrictions were imposed by Mr. and Mrs. Ragland for the benefit of all of the 29 acres conveyed by them; and that this general plan or scheme has been fully implemented. In truth, Mr. York's testimony shows that he tacitly acknowledged these facts in his dealings with Mr. and Mrs. Hendry.

The defendants argue that the restrictive covenant in controversy is "clustered with ambiguous terms," especially in the use of the term "old house"; and they contend that the trial court erred in failing to resolve the ambiguities against the plaintiffs and in favor of defendants' free use of their property. We disagree.

 It is the rule that because a restrictive covenant in a deed is in derogation of the fee conveyed, it must be strictly construed in favor of the grantee and against the grantor; and if there is any ambiguity in the terms of the restriction, or substantial doubt of its meaning, the ambiguity and doubt must be resolved in favor of the free use of the land. Baker v. Henderson, 137 Tex. 266, 153 S.W.2d 465, 470 (1941). However, it is equally the rule that in the construction of such restrictions, "the circumstances and conditions surrounding the parties and property must be considered as well as the manifest objects of the grant of restriction, so that the intent of the parties and the object of the deed or restriction should govern, giving the instrument a just and fair interpretation." Fischer v. Reissig, (Tex.Civ.App. —Austin, 1940, writ ref.) 143 S.W.2d 130, 131.

 When we apply these principles of construction to the covenant in question, and consider the testimony given surrounding its making by the grantors and the recognition and use of its terms by the parties, plaintiffs and defendants, we have no difficulty in concluding that there is no defeating ambiguity in its language, and that it was intended to prohibit the very activity now attempted by the defendants; that is, it was designed to require that the houses constructed on the property be wholly of new construction of masonry-type, and that they otherwise meet the requirements of the restrictions as to size and use.

The defendants bring forward other points and contentions. All have been duly considered in the light of the whole record and found to be without merit. They are overruled.

In view of this disposition of the defendants' complaints, we need not decide the questions surrounding plaintiffs' contentions that the covenant in controversy is one running with the land; and we need not decide whether, without regard to scheme or plan, the Raglands are entitled to the judgment rendered on the ground that the covenant is personal to them.

The judgment is affirmed.