## CATALINA SQUARE IMPROVEMENT COMMITTEE, Appellant,

v.

### Austin METZ, et ux., Appellees.

### No. C–2900.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 21, 1982.

Jack H. Emmott, III, Emmott & Arbuckle, Houston, for appellant.

Kenneth J. Will, Houston, for appellees.

Before MILLER, MORSE and JAMES, JJ.

MORSE, Justice.

The appellant non profit corporation filed suit against the appellee resident lot owners in the Catalina Square Subdivision in Harris County, Texas to enforce the restrictions filed of record to which appellees' lot was subject. After appellees answered, appellant filed a motion for summary judgment based upon the pleadings, a certified copy of deed restrictions and an affidavit related to attorney's fees, asking a mandatory injunction to require removal of a composition roof with which appellees replaced their previous wood shingle roof. Appellees filed answer to appellant's motion for summary judgment and the trial court overruled that motion. Thereafter, having filed a cross-action for declaratory judgment, appellees filed a motion for summary judgment asserting that the restrictions sought to be enforced were ambiguous and that appellees were neither obligated to obtain prior permission nor approval from the architectural committee provided for therein, and that as a matter of law appellant should be denied the relief it sought. Appellant filed a response to appellees' motion for summary judgment and a supplemental motion for summary judgment seeking mandatory injunction against violation of the deed restrictions and attorney's fees. The court entered a final judgment granting the appellees' motion for summary judgment and decreed that plaintiff take nothing and be taxed with the costs of court.

Appellant, Catalina Square Improvement Committee, Inc., asserts two points, that the trial court erred in granting the defendants' motion for summary judgment because the deed restrictions are not ambiguous and that the trial court erred in not granting plaintiff's supplemental motion for summary judgment, because defendant's admissions established violation of the

deed restrictions. We reject both points of error and affirm.

The pertinent provisions of the deed restrictions sought to be enforced by appellant are:

No improvements of any character shall be erected or the erection thereof begun, or change made in the exterior design thereof after original construction on any lot or homesite in Catalina Square, Section 1, until plans and specifications have been submitted to an approval in writing by the Architectural Committee as hereinafter constituted. Such approval is to include exterior design, the type of material to be used and the colors to be applied on the exterior of the structure and such approval is to be based on the following general requirements, stipulations and restrictions:

Thereafter there followed subparagraphs (a) through (u) relating to various matters not expressly covering roofing materials or methods, except to the extent that subparagraph (j) provided a minimum as to any residence of $12,000 for labor and material costs as of January 1, 1964, and said ". . . and all future value of improvements to be given consideration based upon comparative costs of labor and material at the time of construction, using the base value hereinabove given." Nothing in the record indicates the cost, comparative cost, color or quality of the replacement composition roof sought to be required to be removed. There is no contention or indication that the replacement roof was substantially different or varied from the permissible material and labor cost provided in the original plans and specifications, which were apparently approved in writing by the architectural committee in connection with the original construction on the lot. Both parties recognize that the legislature of the State of Texas in 1979 passed legislation prohibiting the enforcement of deed restrictions providing for wooden roofing material.

Appellant contends that in violation of the restrictions, the appellees erected improvements or made a change in the exterior design of their home by erecting a roof without getting prior approval of the material and color to be used. Appellees contend that the terms "improvement" and "change . . . in the exterior design" are susceptible to two or more meanings, as is manifested by the appellant's supplemental answers to interrogatories, which were "unable to agree or disagree" as to dictionary definitions of the word "design" and the word "improvement," stating only that "the terms are defined in the context of the language used."

It is our construction of the language used that the phrase "no improvements of any character shall be erected or the erection thereof begun, . . ." referred to the original construction of any home or portion thereof, and that the phrase ". . . or change made in the exterior design thereof after the original construction . . ." is the applicable limiting wording, if any, related to the roof replacement made by appellees. It is not clear that the words "exterior design thereof" were intended to refer to such detailed matters as roofing materials and color. The subsequent wording that "Such approval is to include *exterior design*, the *type of material* to be used and the *colors* to be applied on the exterior of the structure . . ." indicates that these are separate categories of things to be approved, at least as to improvements to be originally erected. If "exterior design" was not inclusive of "type of material" or "colors to be applied on the exterior of the structure," it would appear plausible that with regard to a change, after original construction, no submission of plans and specifications would be required merely as to specific materials or colors to be applied to the exterior of the structure (which constituted its "design"). Plans and specifications don't ordinarily show colors and often specify materials by broad types. To this extent, at least, some ambiguity exists as to the need to submit plans and specifications on replacements.

In any event, both parties recognize the general principles of construction of deed restrictions: "restrictive clauses in instruments concerning real estate must be construed strictly, favoring the grantee and

against the grantor, and all doubt should be resolved in favor of the free and unrestrictive use of the premises," and "if there is any ambiguity in the terms of the restrictions, or substantial doubt of its meaning, the ambiguity and doubt should be resolved in favor of the free use of the land." *Baker v. Henderson*, 137 Tex. 266, 153 S.W.2d 465 (1941, opinion adopted). "Ambiguity exists if the provision is susceptible to two or more meanings so that the intention of the parties cannot be determined." *Memorial Hollow Architectural Control Committee v. Mapes*, 610 S.W.2d 230 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ).

■ Appellant's contention is that *any* change in the exterior materials or color of an improvement without approval of the architectural committee would violate the restrictions, even if repainted with "essentially the same color or a slight difference." Appellant's counsel asserted that the committee would not have withheld approval in such case, but did not contend that the record showed any substantial change in material or color was involved herein. The end sought in the construction of restrictive covenants is to ascertain the intent of the parties as revealed by the language used in the covenant. *Couch v. Southern Methodist University*, 10 S.W.2d 973 (Tex.Comm'n App.1928, judgmt adopted); *Curb v. Benson*, 564 S.W.2d 432 (Tex.Civ.App.—Austin 1978, writ ref'd n. r. e.). In order to justify an injunction, particularly a mandatory injunction requiring removal, a substantial violation would be required to be shown. *Calvary Baptist Church at Tyler v. Adams*, 570 S.W.2d 469 (Tex.Civ.App.—Tyler 1978, no writ). In construing the restriction, the court must give effect to that which is expressly set out, together with that which is necessarily implied, to ascertain the intention of the parties. *H. E. Butt Grocery Company v. Justice*, 484 S.W.2d 628 (Tex. Civ.App.—Waco 1972, writ ref'd n. r. e.); *Smith v. Mobil Oil Corp.*, 495 S.W.2d 628 (Tex.Civ.App.—Eastland 1973, no writ). Certainly it would not be assumed that an architectural committee was delegated the right to disapprove any change other than a substantial one. Such committees cannot add to or change the restrictions. *Johnson v. Dick*, 281 S.W.2d 171 (Tex.Civ.App.—San Antonio 1955, no writ) and *Johnson v. Linton*, 491 S.W.2d 189 (Tex.Civ.App.—Dallas 1973, no writ).

■ The whole matter of enforcing restrictions by requiring the approval of an architectural committee has been recently summarized by the Texas Supreme Court in resolving a case which had twice been the subject of opinions by the Court of Civil Appeals on which applications for writ of error were granted, *Davis v. Huey*, 620 S.W.2d 561 (Tex.1981):

> The majority view with respect to covenants requiring submission of plans and prior consent to instruction [sic] is that such clauses, even if vesting the approving authority with broad discretionary powers, are valid and enforceable so long as the authority to consent is exercised reasonably and in good faith.[3] Other cases have apparently taken the position that a discretionary approval covenant will not permit the approving authority to impose limitations more restrictive than those specific restrictions affecting the lot owner's use of the property. Under this view, a restriction requiring approval of plans will not justify the imposition of building design or site requirements which are more onerous than those specifically stipulated by other restrictions of record.[4]
>
> We find that the better reasoned view is that covenants requiring submission of plans and prior consent before construction are valid insofar as they furnish adequate notice to the property owner of the specific restriction sought to be enforced.
>
> \* \* \* \* \* \*
>
> We hold that as a matter of law Paragraph 8 [titled Architectural Control and Building Plans] failed to provide . . . notice of the . . . restrictions sought to be enforced and therefore the developer's refusal to approve the plans exceeded the authority granted by the restrictive covenants and was void.

---

[3] See, e.g., *Hannula v. Hacienda Homes, Inc.*, 34 Cal.2d 442, 211 P.2d 302, 306 (1949); . . .

*Bersos v. Cape George Colony Club,* 10 Wash.App. 969, 521 P.2d 1217, 1220 (1974).

[4] See *Lushing v. Riviera Estates, Assoc.,* 196 Cal.App.2d 687, 16 Cal.Rptr. 763, 765 (1961); . . . *Hollyhock Farms, Inc. v. Schoenlaub,* 167 N.E.2d 128, 132 (Ohio Ct.C.P.1959).

In context, it would be normal to assume (with regard to what the lot owner has adequate notice of from the recorded restrictions) that a change requiring architectural committee submission and approval would relate only to those alterations that could not be capriciously or arbitrarily rejected, by reason of being substantial, rather than changes which would normally be contemplated as necessary in the course of routinely maintaining the quality of the improvements, and accordingly, the subdivision. In the absence of a showing of substantial change which might cause harm to the scheme of architectural harmony of the subdivision, the restrictions should be so construed as not to indicate any violation thereof by mere failure technically to seek formal approval. With regard to what constitutes a substantial change, the extent of detail normally given in plans and specifications such as those approved for erection of the original construction would appear to provide a logical implied standard. Certainly enforcement should require a showing that the previous approval did not cover the type of material and color involved in the replacement.

The judgment of the trial court sustaining the appellee's motion for summary judgment and ordering that appellant take nothing is in all things affirmed.