**IMPERIAL INTERPLAZA II, INC., Appellant,**

v.

**CORRECTIONS CORPORATION OF AMERICA, INC., Appellee.**

No. B14–86–146–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 28, 1986.

Rehearing Denied Sept. 25, 1986.

Joe G. Roady, Houston, for appellant.

B.J. Walter, Jr., David Lee Crawford, Houston, for appellee.

Before PAUL PRESSLER, SEARS and CANNON, JJ.

OPINION

CANNON, Justice.

Imperial Interplaza II, Inc. (Imperial) appeals the trial court's summary judgment in favor of Corrections Corporation of America, Inc. (CCA). Imperial filed suit to enjoin the construction and operation of an illegal alien detention center on property adjacent to that owned by Imperial. The land owned by Imperial and the land leased by CCA for the detention center are covered by the same deed restrictions. Imperial brings five points of error challenging the trial court's summary judgment ruling that CCA's maintaining the detention center does not violate the deed restrictions. Imperial argues (1) as a matter of law the Architectural Control Committee of World Houston, Inc. (the Committee) did not have the power to allow the use of premises in the office park that is incompatible with uses enumerated in the deed restrictions; (2) a genuine issue of material fact exists regarding whether the use of premises for a detention center is incompatible with the enumerated uses; (3) the language in the deed restrictions granting the Committee power to approve particular uses is ambiguous and not subject to the trial court's construction; (4) the permission granted by the Committee to CCA is void because neither CCA nor the Committee complied with the declaration's variance requirements; and (5) a genuine issue of material fact exists concerning whether CCA or the Committee complied with the variance provisions. We affirm.

All issues in this appeal center upon the construction of two sections of the Declaration of Protective Covenants for World/Houston International Business Center, Section 1, as amended. It is therefore necessary to quote these provisions in full. Article VII, *Building, Use and Con-*

*struction Standards and Restrictions,* provides:

> *Section 1. Permitted Uses.* All of the Building Sites shall be used solely for office, office park, office/warehouse, hotel, retail, and such other uses as the Committee may determine, in its sole discretion, in writing, to be permitted uses which shall not be incompatible with the foregoing uses.... [I]n the absence of specific restrictions to the contrary, written approval of the Committee of a particular permitted use shall be conclusive evidence of compliance with the intent of these Protective Covenants as to the use of the portion of the Restricted Properties expressly made the subject of such approval.

Article VI, *Architectural Control Committee,* provides:

> *Section 4. Variances.* This Declaration contains a number of provisions wherein the Committee is expressly granted the authority, in its discretion, to permit, consent to or approve a variance from the specific requirements or affect of a particular covenant. The Committee may require the submission to it of such documents and items ... as it shall deem appropriate, in connection with its consideration of a request for a variance. If the Committee shall approve such request for a variance, the Committee may evidence such approval, and grant its permission for such variance, only by written instrument, addressed to the Owner of the Building Site(s) relative to which such variance has been requested, describing the applicable covenant(s) and the particular variance requested, expressing the decision of the Committee to permit the variance, describing (when applicable) the conditions (which may be affirmative and/or negative in nature) on

which the variance has been approved (including, as examples but without limitation, ... the nature of the proposed use which has been approved, ...) and signed by a majority of the then members of the Committee....

Under the last sentence of Article VII, Section 1, quoted above, written approval by the Committee is conclusive on the propriety of a proposed use unless a specific provision in the Declaration prohibits the proposed use. It is undisputed that the Committee approved in writing CCA's proposal to use its leased property for the construction and operation of a detention center. Thus, this writing must be given conclusive effect unless the declaration contains a specific restriction to the contrary.

In its first point of error, Imperial argues that the language in Article VII, Section 1, "which shall not be incompatible with the foregoing uses" is such a restriction. Imperial therefore concludes in its second point of error the Committee's written approval is not to be given conclusive effect and the compatibility of the proposed use remains a question of fact rendering the summary judgment improper. Imperial further reasons that if the language can be interpreted as other than a limitation on the Committee's authority, then the language is ambiguous, cannot be interpreted by applying established rules of construction, and must be interpreted by resort to extrinsic evidence. Therefore summary judgment is improper.

■ Although we find the language ambiguous,[1] we conclude that after applying applicable rules of interpretation, the parties did not intend the compatibility language in Article VII, Section 1 to limit the Committee's authority.

---

1. The quoted language is ambiguous on its face because it can be understood to have at least three meanings, which we illustrate by slightly modifying the sentence itself: (1) "all of the Building Sites shall be used solely for ... such other uses as the Committee may determine ... to be permitted uses [, but] such [uses can]not be incompatible with the foregoing uses ..."; (2) "all of the Building Sites shall be used solely for ... such other uses as the Committee may determine ... to be permitted uses [and] which shall [be deemed] not [to] be incompatible with the foregoing uses ..."; or (3) "all of the Building Sites shall be used solely for ... such other uses as the Committee may determine ... to be uses which are not incompatible with the foregoing uses...."

To ascertain the intent of the parties, the entire instrument should be considered so that none of its provisions is rendered meaningless. *Southland Royalty Co. v. Pan American Petroleum Corp.*, 378 S.W.2d 50, 53 (Tex.1964). Also, words and phrases in a restrictive covenant will be accorded their ordinary and commonly accepted meanings. *Knopf v. Standard Fixtures Co.*, 581 S.W.2d 504, 506 (Tex.Civ. App.—Dallas 1979, no writ).

A commonly and ordinarily accepted meaning of "specific" is "precisely formulated or restricted; definite; explicit; of an exact or particular nature." Black's Law Dictionary, 1254 (5th ed. 1979). The Declaration clearly contains some specific restrictions on uses to be permitted in the World/Houston Project. For instance, Article VII, Section 14 states:

> No oil drilling or development operations, oil refining, quarrying, or mining operations of any kind shall be permitted upon or within any portion of the Restricted Properties, nor shall oil wells, tanks, tunnels, mineral excavations or shafts be permitted upon or within any portion of the Restricted Properties. No derrick or other structures designated for use in boring for oil or natural gas shall be erected, maintained or permitted upon any portion of the Restricted Properties.

In contrast, the compatibility language is not specific. Each proposed use requires a separate assessment and comparison by the Committee. Assessing and comparing necessarily requires an exercise of judgment by the Committee. Thus, compatibility is not a precisely formulated, definite, explicit, exact, or particular restriction. Compatibility is not a restriction which deprives the Committee's approval of its conclusive effect.

Furthermore, the Declaration itself requires the interpretation that compatibility serves to guide, rather than limit, the Committee's exercising its discretion in approving uses. Article VIII, Section 5 provides:

> *Interpretation.*
>
> If this Declaration or any word, clause, sentence, paragraph, or other part thereof shall be susceptible of more than one or conflicting interpretations, then the interpretation which is more nearly in accordance with the general purposes and objectives of this Declaration shall govern.

The developer's stated purpose for adopting these declarations is "to adopt a uniform plan for the orderly development of such property." It is apparent from the Declaration that the developer intended to accomplish this goal by granting the Committee broad authority over many matters affecting the property. For example, no improvement can be placed on the property without the Committee's prior approval; it is within the Committee's sole discretion to specify a limited number of acceptable exterior materials; it is within the Committee's discretion to specify minimum setbacks, minimum height restrictions, maximum coverage ratio, the location, height, and extent of fences, walls, or other screening devices, and the orientation of the structure with respect to access and major entry and frontage; it is within the Committee's sole discretion to reject any plans and specifications as incompatible with the design or overall character and aesthetics of the project; the committee is expressly granted the authority in its discretion to permit variances from specific requirements of particular covenants; the keeping of animals and birds is permitted only with the Committee's approval; the Committee determines exclusively and finally which activities constitute noxious or offensive activities not to be permitted within the project; etc. The interpretation given Article VII, Section 1 by the trial court is consistent with the developer's intent to vest the Committee with broad discretion. We overrule Imperial's points one through three.

Imperial argues in its fourth and fifth points of error that CCA's use of its property for a detention center is incompatible with the property's enumerated permissible uses. Therefore, it was necessary for CCA to procure a variance. We have determined, however, that the Committee's hav-

ing approved CCA's use is conclusive on the compatibility issue. Therefore, a variance was not required. Moreover, we find the Committee's written approval complies with the Declaration's variance requirements. We overrule Imperial's fourth and fifth points of error.

Summary judgment affirmed.

SEARS, Justice, concurring.

I concur in the results; however, I do not find the Declaration of Protective Covenants ambiguous.