**VILLAGE OF PHEASANT RUN HOMEOWNERS ASSOCIATION, INC., Appellant,**

v.

**Ross L. KASTOR and Lisa Weisemann, Appellees.**

No. 14–99–01208–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 10, 2001.

Charles A. Daughtry, Houston, for appellants.

Joseph M. Nixon, David A. Furlow, Houston, for appellees.

Panel consists of Justices FOWLER, EDELMAN, and CANNON.*

## OPINION

WILLIAM B. CANNON, Justice (Assigned).

This is an appeal from a summary judgment in favor of appellee, Ross L. Kastor, *et. al.* ("Homeowners"), involving the enforcement of deed restrictions. The appellants, the Village of Pheasant Run Homeowners Association, Inc. ("Association"), filed suit against Homeowners, for painting a home in colors that allegedly violated deed restrictions. In granting the Homeowners' summary judgement and denying the Associations' partial summary judgment, the trial court ordered the Association to take nothing, and to pay all courts costs.

In two points of error, the Association asserts that the trial court erred by granting summary judgment in favor of the Homeowners. First, the Association argues that the Architectural Control Committee of the Association has the express power through the deed restrictions to approve color changes of existing structures within the subdivision. Second, the Association claims the deed restrictions give it the power to adopt architectural guidelines that interpret the provisions of the deed restrictions. We reverse and remand.

## FACTUAL BACKGROUND

The Association is a homeowners association empowered to enforce the deed restrictions in the Village of Pheasant Run subdivision. Homeowners Ross Kastor and Lisa Weisermann, are the owners and occupants of lot 44, block two, section two, located at 13514 Dripping Springs in Houston, Texas. The Homeowners' property is located within the Village of Pheasant Run subdivision and subject to the deed restrictions. It is undisputed that the Homeowners, without the approval of the Architectural Control Committee, changed the color of their front door and their garage door to a bright blue color. The guidelines established by the committee, however, specifically disapproved of the use of bright blue colors because the color is out of harmony with surrounding structures.

## I. Summary Judgment

The underlying purpose of Texas' summary judgment rules is a narrow one, which allows for the elimination of "patently unmeritorious claims and untenable defenses." *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 n. 5 (Tex.1979). Pursuant to Rule 166a(c), a summary judgment is proper only when a movant establishes that there is no genuine issue of material fact and that he or she is therefore entitled to judgment as a matter of law. TEX.R.CIV.P . 166a (c); *Swilley v. Huges,* 488 S.W.2d 64, 67 (Tex. 1972). Thus, the question on appeal is not whether the summary judgment proof raises a fact issue, but is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of material fact as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970).

■ A trial court should grant a defendant's motion for summary judgment if

---

* Senior Justice William B. Cannon sitting by assignment.

the defendant disproves at least one essential element of the plaintiff's cause of action, or if the defendant establishes all the elements of an affirmative defense as a matter of law. *American Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997); *Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997); *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex. 1991). Significantly, the usual presumption that the judgment is correct does not apply to summary judgments. *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex. 1984); *see also Torres v. Caterpillar, Inc.,* 928 S.W.2d 233, 239 (Tex.App.—San Antonio 1996, writ denied) (stating that Texas law generally considers summary judgment to be a harsh remedy). Moreover, when both parties file a motion for summary judgment, and one is granted and one is denied, "the reviewing court should review the summary judgment evidence presented by both sides and determine all questions presented and render such judgment as the trial court should have rendered." *Commissioners Court v. Agan,* 940 S.W.2d 77, 80 (Tex.1997); *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988).

## II. Restrictive Deed Interpretation

It is the duty of this Court, as it was the duty of the trial court, to review the wording of the restrictive language and determine therefrom, the intent of the drafter. *Wilmoth v. Wilcox,* 734 S.W.2d 656, 658 (Tex.1987). Most importantly, however, in our effort to determine such intent, we must give liberal construction to the covenant's language, seeking to insure that its provisions are given effect. TEX. PROP.CODE ANN. § 202.003(a) (Vernon 1995); *see, e.g., Crispin v. Paragon Homes, Inc.,* 888 S.W.2d 78, 81 (Tex. App.—Houston [1st Dist.] 1994, writ denied).

Restrictive clauses concerning real estate must be strictly construed. Normally, the construction will favor the grantee, as against the grantor. All doubts should be resolved in favor of the free and unrestricted use of the premises. *MacDonald v. Painter,* 441 S.W.2d 179, 183 (Tex.1969). The language used to create a restriction will be given the meaning by which the words are ordinarily understood and interpreted and that upholds and enforces the contract as it was understood and intended by the parties. *Green v. Gerner,* 283 S.W. 615, 616 (Tex.Civ. App.—Galveston 1926, writ granted), *affirmed,* 289 S.W. 999 (Tex.1927). It is the objective, not the subjective, intent of the parties that must be ascertained. The intent that is expressed or apparent in the writing controls. *Travis Heights Imp. Ass'n v. Small,* 662 S.W.2d 406, 409 (Tex. App.—Austin 1983, no writ). In ascertaining the intent of the parties, the entire instrument should be considered, so that none of its provisions is rendered meaningless. *Imperial Interplaza II v. Corrections Corp.,* 717 S.W.2d 422, 424 (Tex. App.—Houston [14th Dist.] 1986, ref. n.r.e.). Further, the meaning of the words used must be determined as of the date the covenant was written, not as of the date it is being enforced. *Wilmoth v. Wilcox,* 734 S.W.2d 656, 657–58 (Tex.1987).

If there are ambiguities, the circumstances and conditions surrounding the parties and the property must also be considered, together with the clear goals of the restrictive grant, so that the intent of the parties governs. *York v. Howard,* 521 S.W.2d 344, 347 (Tex.Civ.App.—Waco 1975, no writ). In the alternative, if there is no ambiguity, the intentions of the parties must be determined from the language of the covenant itself, construed in connection with the surrounding circumstances. *Hoye v. Shepherds Glen Land Co., Inc.,*

753 S.W.2d 226, 229 (Tex.App.—Dallas 1988, writ denied).

There is a statutory exception, however, to the common law rule that restrictive covenants are to be strictly construed. Restrictive covenants contained in instruments governing the establishment, maintenance, and operation of a residential subdivision, planned unit development, condominium or townhouse regime, or any similar planned development are to be liberally construed to give effect to their purposes and intent. TEX.PROP.CODE ANN. § §§ 202.003(a); (Vernon Supp.2001). This restrictive covenant falls within Section 202.003(a) and is unambiguous, therefore, we construe it liberally. *Ashcreek Homeowner's Ass'n v. Smith*, 902 S.W.2d 586, 588–89 (Tex.App.—Houston [1st Dist.] 1995, no writ). Therefore, in ascertaining the intent of the parties, we will consider the entire instrument, so that none of its provisions is rendered meaningless. *Imperial Interplaza II v. Corrections Corp.*, 717 S.W.2d 422, 424 (Tex.App.—Houston [14th Dist.] 1986, writ ref. n.r.e.).

## III. Architectural Control Committee

In the first point of error, the Association asserts that the trial court erred in granting summary judgment because the Association proved that the committee has the express power through the deed restrictions to approve color changes of existing structures within the subdivision. Two provisions of the deed restrictions are at issue here:

### Article III

#### Use and Building Restrictions

*Section 2. Architectural Control.* No building or other structure shall be erected, placed or altered on any Lot until the construction plans and specifications therefor and a plot plan showing the location of the structure thereon have been approved by the Architectural Control Committee as to harmony with existing structures, with respect to exterior design and color with existing structures, as to location with respect to topography and finished grade elevation, and as to compliance with minimum construction standards, all as more fully provided for in Article IV hereof.

### Article VII

#### Architectural Control Committee

*Section 1. Approval of building plans.* No building shall be erected, placed, or altered on any Lot until the construction plans and specifications and a plot plan showing the location of the structure, have been approved in writing as to harmony of exterior design and color with existing structures ... a copy of the construction plans and specifications and a plot plan, together with such information as may be deemed pertinent, shall be submitted to the Architectural Control Committee, or designated representative, prior to commencement of construction. The Architectural Control Committee may require the submission of such plans, specifications, and plot plans, together with such other documents as it deems appropriate, in such form and detail as it may elect at its entire discretion.

The Homeowners contend that these two sections simply refer to the building of a new structure or the re-design or modification of an old structure. Specifically, they assert that the deed restrictions do not identify style or color or color scheme with which all buildings should be in harmony. Therefore, the Homeowners argue that because the authority given to the Architectural Control Committee in Article III, Section 2 and Article VII, Section 1, is restricted to new construction, the commit-

tee's subsequent authority to pre-approve paint color can not apply to the Homeowners' choice of color when painting an existing home. We find this interpretation to be strained.

This interpretation ignores the collective language and intent of Article III, Section 2 and Article VII, Section 1. Articles III, IV, *supra* at 751. The restrictive language in the deed states, "No building shall be erected, placed, or altered .... approved by the Architectural Control Committee ... as to harmony with existing structures, with respect to exterior design and color with existing structures." Article III, Section 1, precisely requires compliance with the minimum construction standards provided for in Article IV, which gives the Architectural Control Committee the authority to set minimum guidelines. In addition, Article VII, Section 2, particularly affords the Architectural Control Committee entire discretion to require the submission of plans and other documents as the committee deems appropriate. Clearly, the paragraph is intended to govern alterations to houses, not just new house construction. *Pilarcik v. Emmons*, 966 S.W.2d 474, 479 (Tex.1998). The empowerment clause relating to the Architectural Control Committee expressly allows the committee the right to maintain its power throughout the life of the restrictive covenants. That is the very purpose of such committees.[1] *See Pilarcik*, 966 S.W.2d at 479.

We, therefore, sustain the Association's first point of error.

## IV. Notice

■ In point of error two, the Association argues that the deed restrictions give it the power to adopt architectural guidelines that interpret the provisions of the deed restrictions. As a result, the Association asserts that the deed allows them to adopt architectural guidelines, which make it clear that, (1) a committee exists and (2) the committee may establish standards independent from those articulated in the deed restrictions to effectuate the grantors intent. Therefore, the Homeowners had notice of the guidelines as well as the deed restrictions and should have complied with the provisions.

■ Conversely, the Homeowners contend that they had no actual or constructive notice of any of the deed restrictions. In fact, they contend they are unaware of the "guidelines" that exist in addition to the restrictions themselves, and that the guidelines are unclear. Specifically, the Homeowners argue that the Association has no power to compel an owner to submit a paint chip prior to repainting, as opposed to submitting architectural plans for construction or remodeling. Further, Homeowners point out that the deed restrictions are very specific on other "aesthetic" issues, however, the deed is not specific as to a specific color scheme. As noted by the Homeowners, covenants requiring submission of plans and consent before construction are valid if they provide adequate notice to the property owner. *Davis v. Huey*, 620 S.W.2d 561, 565–66 (Tex.1981).

---

1. We have considered the Homeowners argument that the guidelines are unenforceable under Section 204.003 of the Texas Property Code. Upon reading the entire deed, however, we conclude that the legislature's intent was not to constrain a committee's power through its board of directors, if a deed expressly provides for such power. To apply Section 204.003 in the manner requested by the Homeowners, would require this Court to interpret the deed restrictions out of context. Thus, the empowerment clause expressly defined within the deed, reviewed under this summary judgment evidence, allows the committee to maintain power and exercise such power.

The Homeowners acknowledge having a copy of the deed restrictions, but argue that the deed itself contains no language limiting re-painting color choices, thus denying the Homeowners of the notice of the specific restrictions to be enforced. *Id.* The record does not support this contention. The deed restrictions include the following sections:

## ARTICLE VII

### Architectural Control Committee

*Section 1. Approval of building plans.* No building shall be erected, placed, or altered on any Lot until the construction plans and specifications and a plot plan showing the location of the structure, have been approved in writing as to harmony of exterior design and color with existing structures ... a copy of the construction plans and specifications and a plot plan, together with such information as may be deemed pertinent, shall be submitted to the Architectural Control Committee, or designated representative, prior to commencement of construction. The Architectural Control Committee may require the submission of such plans, specifications, and plot plans, together with such other documents as it deems appropriate, in such form and detail as it may elect at its entire discretion.

*Section 4. Minimum Construction Standards.* The Architectural Control Committee may from time to time promulgate an outline of minimum acceptable construction standards; provided, however, that such outline will serve as a minimum guideline and such Architectural Control Committee shall not be bound thereby.

The First Court of Appeals, in *Tien Tao v. Kingsbridge Park Community,* looking at identical language held that these sections make it clear that, (1) a committee exists and (2) the committee may establish standards independent from those articulated in the deed restrictions, to effectuate their intent. 953 S.W.2d 525, 529 (Tex. App.—Houston [1st Dist.] 1997, no pet.) More importantly, other sections of the deed restrictions deal with such diverse matters as minimum square footage, exterior materials, sidewalk, landscaping, offensive activities, temporary outbuildings, storage of cars and boats, mineral operations, walls, fences, lot maintenance, rubbish collection, signs and billboards, antennae, and utility lines. It is clear from the breadth of the restrictions that the subdivision is concerned with virtually every aspect of the appearance and value of the neighborhood. *Id.* It is not surprising that specific color restrictions for re-painting are addressed by the committee or that guidelines are formulated to address them. *Id.*

A person who buys land is deemed to have notice of all recorded instruments connected to the conveyance. TEX. PROPR. CODE ANN. § 13.002 (Vernon Supp.2001). Moreover, the record shows the Homeowners had actual notice of the applicable restrictions. The Homeowners, however, argue that the guidelines are not clear and that some ambiguity exists as to the need to submit plans and specifications on replacements. Further, the Homeowners assert that the guidelines are not enforceable, that they do not stand as an absolute prohibition where the restriction was adopted later in time, and that there is no material breach in the event a breach occurred.

To support this contention, the Homeowners suggest that we follow our decision in *Catalina Square Imp. Comm. v. Metz.* 630 S.W.2d 324 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd). That particular case, however, dealt with a different type

of restrictive deed. In *Catalina*, we held that the terms "improvement" and "change ... in the exterior design" are susceptible to two or more meanings, thus, we resolved any ambiguity or doubt in favor of the free use of the land. *Id.* at 327. Nevertheless, the restrictive deed language applicable in the instant case states "[n]o building shall be erected, placed or altered." As specified in issue one, the Texas Supreme Court decided that the term "altered" applies to changes in existing construction and that such changes can require approval. *Pilarcik*, 966 S.W.2d at 479. Furthermore, *Catalina* is also distinguishable because we recognized in that opinion that the prevailing view of enforcing restrictions by requiring the approval of an architectural committee is "that covenants requiring submission of plans and prior consent before construction are valid insofar as they furnish adequate notice to the property owner of the specific restriction sought to be enforced." *Davis*, 620 S.W.2d at 565–66. Consequently, this same analysis decided the *Tien Tao* case, where the First Court of Appeals held that covenants requiring submission of plans and consent before construction are valid and that provisions, similar to Section 1 and Section 2 discussed above, do provide adequate notice to the property owner. 953 S.W.2d at 529.

Moreover, the *Catalina* opinion states that a substantial violation is required in order to justify a mandatory injunction. 630 S.W.2d at 327. Thus, in construing the restriction, we must give effect to that which is expressly set out, together with that which is necessarily implied, to ascertain the intentions of the parties. *Id.* In *Catalina*, the appellant did not provide any evidence of a substantial change, however, here specific guidelines were introduced into evidence and bright blue is a direct violation of the guideline as well as a substantial variation from the uniform

scheme. It is clear, that the property owner's responsibility is to obtain permission for virtually any exterior change, concerning new or existing structures. *See Tien Tao*, 953 S.W.2d at 529.

We sustain the Association's point of error two.

Accordingly, we find that the trial court erred in granting summary judgment to the Homeowners because the Association, acting within its authority, could enforce the restriction that serves as the basis of this cause of action. Therefore, we reverse the decision of the trial court and remand this case to the trial court.