**TIEN TAO ASSOCIATION, INC., Appellant,**

v.

**KINGSBRIDGE PARK COMMUNITY ASSOCIATION, INC., Appellee.**

**No. 01–96–00395–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 25, 1997.

David A. Furlow, Houston, for Appellants.

Kenneth M. Morris, William G. Gammon, Houston, for Appellees.

## OPINION

ANDELL, Justice.

In this appeal, we must balance the conflicting rights of a homeowner and a neighborhood association. We are asked to decide if the trial court erred in issuing an injunction to enforce various deed restrictions on the use of residential property owned by appellant, the Tien Tao Association, a nonprofit religious corporation. We hold it did not, and we affirm.

### Background

Kingsbridge Park is a subdivision located in far southwest Houston. Appellee, the Kingsbridge Park Community Association, promulgates and enforces various deed restrictions, primarily through its architectural control committee (ACC). Eddie Chan and Fat Fan Cheung bought adjacent homes in Kingsbridge at 14102 and 14103 Amber Grove Court. After they deeded these homes to Tien Tao in May 1994, Tien Tao became a corporate homeowner subject to the deed restrictions. A few months before he deeded the home to Tien Tao, Cheung sought and received permission from the ACC to add a game room to the home at 14102 Amber Grove Court. When the building visibly varied from the structural plans submitted before construction began, the ACC sought additional information from Cheung; later, the ACC approved the altered game room plans. Photographs of the room's interior show it is designed and furnished for worship.

Once it acquired the home in January 1995, Tien Tao made several changes to the outside of the property over the following five months. It erected three 30 foot high flagpoles in the backyard, replaced the back lawn with limestone and caliche, and repainted the home's shutters. However, Tien Tao did not seek advance approval from the ACC before making these changes.

Tien Tao housed Cheung and another priest in one of the homes, and also provided frequent accommodation for visiting followers who gathered to worship and discuss plans for the building of a temple nearby. This influx of devotees entailed an increase in the amount of traffic and the number of cars parked in the cul-de-sac. A neighbor complained to Kingsbridge about the changes to the home and the increased traffic.

This complaint generated several inspections and a series of letters from the ACC to Tien Tao concerning these perceived violations of the deed restrictions. Although Tien Tao did comply with some of the requests, it consistently questioned Kingsbridge's authority to enforce compliance. Ultimately, Kingsbridge sued Tien Tao to enforce its compliance with the deed restrictions. Tien Tao filed a general denial. After a bench trial, the court ruled in favor of Kingsbridge.

In its amended final judgment and permanent injunction, the trial court ordered Tien Tao to: (1) remove the three flagpoles from the property and not reconstruct them; (2) repaint the shutters of the home in a color approved by the community association; (3) remove the stones and caliche from the backyard, replacing them with grass; (4) use the property "in a manner consistent with single family residential use" and cease using it to house "more than one family"; and (5) remove a recreational vehicle from the property and cease to store or park it there. The trial court enjoined Tien Tao from parking cars on the street from 10:00 p.m. until 6:00 a.m. each day, except in the driveways or directly in front of the two houses it owned, and awarded attorneys' fees to Kingsbridge. Tien Tao's motion for new trial was overruled, and this appeal ensued.

### Construction of the Deed Restrictions

■ In point of error one, Tien Tao contends the trial court erroneously applied a liberal construction of the deed restrictions, instead of a strict construction. In point of error two, Tien Tao contends the restriction governing "use" of the property is an architectural form restriction, governing construction, but not residential use.

The pertinent "use" portion of the covenant between the homeowners and Kingsbridge is as follows:

## ARTICLE III.

### Use Restrictions

■ *Section 1. Single family residential construction.* No building shall be erected, altered, or permitted to remain on any Lot other than one detached, single-family dwelling used for residential purposes only, and not to exceed two and one-half (2½) stories in height.

. . . .

As used herein, the term "residential purposes" shall ... be construed to prohibit mobile homes or trailers being placed on the Lots, or the use of said Lots for garage apartments, or apartment houses; and no Lot shall be used for business or professional purposes of any kind, nor for any commercial or manufacturing purposes.

When we construe a restrictive covenant, we are guided by several principles. Our primary obligation is to determine the intent of the parties. *Meyerland Community Improvement Ass'n v. Temple,* 700 S.W.2d 263, 267 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). We focus not on their subjective intent but on their objective intent, as it is reflected in the written contract. *Id.* We construe a restrictive covenant to give effect to its purpose. *Ashcreek Homeowner's Ass'n, Inc. v. Smith,* 902 S.W.2d 586, 589 (Tex.App.—Houston [1st Dist.] 1995, no writ).

Kingsbridge contends the term "use" applies not only to the construction but also to the uses to which the property is put. It notes that the definition of "single-family" has been interpreted to exclude the use by unrelated people of a residence. *See Wald v. West MacGregor Protective Ass'n,* 332 S.W.2d 338, 341 (Tex.Civ.App.—Houston 1960, writ ref'd n.r.e.) (fraternity house not "residential purpose").

When lots are restricted to "residential purposes only" and the restrictions forbid use for "business purposes of any kind" or for "any commercial, manufacturing or apartment house purposes," some Texas courts have interpreted the restriction as addressing only the architectural character of the structure. *See Deep East Texas Regional MHMRS v. Kinnear,* 877 S.W.2d 550, 554 (Tex.App.—Beaumont 1994, no writ); *Permian Basin Ctrs. v. Alsobrook,* 723 S.W.2d 774, 776–77 (Tex.App.—El Paso 1986, writ ref'd n.r.e.); *Collins v. City of El Campo,* 684 S.W.2d 756, 761–62 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.).

■ Other Texas courts have held that a comparable restrictive covenant addresses both architectural form and the use to which a residence may be put, when the clause says a lot shall be used "for residential purposes only" and that a residence "shall be construed to be a single family dwelling." *See Shaver v. Hunter,* 626 S.W.2d 574, 576 (Tex.App.—Amarillo 1981, writ ref'd n.r.e.); *Davis v. Hinton,* 374 S.W.2d 723, 725–26 (Tex.Civ.App.—Tyler 1964, writ ref'd n.r.e.). The use of the word "dwelling" is emphasized as being indicative of a use restriction that goes beyond the nature of the construction. This Court, in *Davis v. City of Houston,* 869 S.W.2d 493, 495 (Tex.App.–Houston [1st Dist.] 1993, writ denied), also focused on the meaning of the word "dwelling" to interpret a covenant as restricting the use of the structure as well as its form. In determining whether a use restriction applies only to architectural form or to actual use of the property, courts look to headings as well as to the clauses themselves. *See Collins,* 684 S.W.2d at 761–62.

Here, article III is entitled "Use Restrictions." In section one, the term "single-family residential construction" is used, but so is the term "single-family dwelling used for residential purposes only." Garage apartments and apartment houses are prohibited, as are uses for business, manufacturing, and commercial purposes. In addition, use for professional purposes is prohibited. We conclude that the heading, the word "dwelling," and the prohibition against use for "professional purposes" combine to place this restriction in the category of those dealing with the use of a residence, not merely its construction. We see no error in the trial court's construction of the covenant.

We overrule points of error one and two.

### Notice

■ In point of error three, Tien Tao argues it had no actual or constructive notice

of any of the deed restrictions. It contends it was unaware of the "guidelines" that exist in addition to the restrictions themselves, and that the guidelines are unclear. As noted by Tien Tao, covenants requiring submission of plans and consent before construction are valid if they provide adequate notice to the property owner. *Davis v. Huey*, 620 S.W.2d 561, 565–66 (Tex.1981).

Tien Tao acknowledges having a copy of the deed restrictions, but argues it was not aware of any guidelines until it received a letter in January 1995 from the ACC. The record does not support this contention. The deed restrictions include the following sections:

## ARTICLE IV.

### Architectural Control Committee

*Section 1. Approval of building plans.* No building, fence, wall, or other structure shall be commenced, erected, placed, or altered on any Lot, nor shall any exterior addition to or change or alteration therein be made until the construction plans and specifications describing the nature, kind, shape, height, materials and a plot plan showing the location of same, have been approved in writing ... by the Architectural Control Committee.

. . . .

The Architectural Control Committee shall have full and complete authority to approve construction of any improvement on any Lot, and its judgment shall be final and conclusive.

. . . .

*Section 4. Minimum Construction Standards.* The Architectural Control Committee may from time to time promulgate an outline of minimum acceptable construction standards; provided, however, that such outline will serve as a minimum guideline and such Architectural Control Committee shall not be bound thereby.

These sections make it clear that (1) a committee exists and (2) the committee may establish standards independent from those articulated in the deed restrictions, to effectuate their intent. Other sections of the deed restrictions deal with such diverse matters as minimum square footage, exterior materials, sidewalk, location of improvements on the lots, offensive activities, temporary outbuildings, storage of cars and boats, animals, mineral operations, walls, fences, hedges, visual obstructions, lot maintenance, rubbish collection, signs and billboards, antennae, and utility lines. It is clear from the breadth of the restrictions that the subdivision is concerned with virtually every aspect of the appearance and value of the neighborhood. It is not surprising that minutiae such as lawn ornaments and decorations would be addressed by the committee or that guidelines would have been formulated to address them.

A person who buys land is deemed to have notice of all recorded instruments connected to the conveyance. Tex.Prop.Code Ann. § 13.002 (Vernon Supp.1997). Moreover, the record shows Cheung had actual notice of the applicable restrictions. He applied to the ACC for approval of the game room addition in 1994. Well after he deeded the property to Tien Tao, Cheung also submitted a request to the ACC for permission to keep the flagpoles. His knowledge of the restrictions and guidelines should be imputed to Tien Tao because Cheung continued to act on behalf of the corporation.

Tien Tao argues the guidelines are not clear. It is clear, however, that the property owner's responsibility is to obtain permission for virtually any exterior change.

We overrule point of error three.

### Sufficiency of the Evidence

■ In point of error four, Tien Tao argues there was no or insufficient evidence to support the findings of fact or the judgment. Because it argues only factual sufficiency in its brief, we limit our review to this argument.

We will reverse a judgment based on factual insufficiency of the evidence only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). We consider all of the evidence, both in support of and contrary to the finding. *Meyerland*, 700 S.W.2d at 267. A

party must substantially violate a deed restriction before the trial court may issue a permanent injunction. *Catalina Square Improvement Comm. v. Metz,* 630 S.W.2d 324, 327 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.).

Article IV, section one, of the deed restrictions gives the ACC the general right to approve in advance any alterations made to a lot or home. The ACC guidelines flesh out and particularize this general right. We examine the sufficiency of the evidence to support the trial court's findings that Tien Tao's violation of each articulated standard was substantial, warranting a permanent injunction. Evidence pertaining to the various violations of the deed restriction agreement was presented to the trial court as follows:

**Backyard Landscaping.** ACC guideline 20.1 permits the ACC to review "visually objectionable" landscaping. Delores Sue, a Kingsbridge representative, testified Tien Tao replaced the lawn in the back yard with limestone and caliche. A Harris County inspector testified he issued a "no permit" violation to Tien Tao. Helena Sauceda, a neighbor, testified the caliche surface caused water to run off into her yard, creating drainage problems. Tien Tao stipulated it did not obtain advance permission from the ACC to lay the surface. Huang Wong, representing Tien Tao, testified the surface was laid to fill in and level the yard. Pictures admitted into evidence show the extent of the caliche surface. Wong acknowledged Tien Tao did not comply with Kingsbridge's written directive to replace the lawn.

**Flagpoles.** ACC guideline 13.1 prohibits permanently affixed flagpoles on front lawns or any part of a lot visible "from any street." Sue testified Tien Tao did not obtain advance approval from the ACC before erecting the flagpoles. Tien Tao stipulated to this. Sauceda testified she could see the flagpoles. Pictures admitted into evidence show the flagpoles erected on the lot. After being notified of the violation, Tien Tao applied for permission to keep the flagpoles up. The ACC denied the application. Tien Tao did not remove them. The ACC obtained a temporary injunction ordering the flagpoles removed. Sue testified Tien Tao did not comply until Kingsbridge sought a contempt citation.

**Shutters.** ACC guideline 6.1 directs each resident to maintain the original color the home is painted. Guideline 6.2 notes all color changes must be approved in advance by the ACC. Guideline 6.4 identifies the colors black, brown, tan, beige, gray, and white as being permissible colors. Sauceda testified Tien Tao painted the home's shutters green. Pictures admitted into evidence show the green shutters. Sue testified Tien Tao did not obtain advance approval before painting the shutters green. Tien Tao acknowledged this. Tien Tao repainted the shutters white without seeking advance approval from the ACC. Wong testified he assumed no permission was needed because white was a permissible color under the guidelines. Tien Tao later complied with the ACC's directive, repainting the shutters their original gray color.

**Storage of recreational vehicle (RV) on Property.** Article III, section nine, of the deed restrictions prohibits residents from parking an RV on any lot, except in a closed garage. Sue testified Tien Tao kept an RV in the driveway. Sauceda testified she saw an RV parked in the driveway for weeks. Pictures admitted into evidence show the RV parked in the driveway. Tien Tao acknowledges parking the RV, although they explained it was only on a temporary basis. Wong testified another neighbor was not approached about removing the RV parked in his driveway. Kingsbridge sent a letter to Tien Tao notifying it of the violation and directing it to remove the RV. Tien Tao complied soon thereafter.

**Offensive Activities.** Article III, section seven, of the deed restrictions prohibits any offensive or noxious activity that becomes an annoyance or nuisance. Sue testified she observed many vehicles parked in the cul-de-sac and received numerous complaints from neighbors concerning the volume of traffic. Sauceda testified she saw an average of four to five cars coming and going at all hours of the day and night. She also testified the cars were sometimes

parked so as to block driveways. During cross-examination, she testified there were sometimes only two to three cars, and said she had noted only 29 different license plates over a nine-month period. Pictures admitted into evidence show four cars parked in each driveway plus three to four cars parked in the cul-de-sac. None of the pictures show a neighbor's driveway being blocked. Some of the pictures do show cars parked so that part of them extends out of the driveway and into the street. Wong testified a constable summoned once by a neighbor did not issue any citations and told Tien Tao members they had a right to park on public streets. Kingsbridge notified Tien Tao of the complaints and directed it to cease its "offensive activity." Tien Tao did not respond or comply. **Single–Family Residential Use.** Article III, section one, dedicates the lots to single-family dwellings used for residential purposes. Sue testified Tien Tao was "running a church" out of the homes and was using them to house more than one family. Sauceda testified she saw more than one family living in the homes. Wong testified the houses were used "for the people who come to Houston to visit, to coordinate the work on the construction." This evidence demonstrates clear and continuing deed restriction violations. Sue testified Kingsbridge considered these substantial violations. The attenuated lack of compliance in the face of temporary injunctions supports this contention. The findings of the trial court are not contrary to the overwhelming weight of the evidence and cannot be considered unjust. The evidence shows a permanent injunction was warranted in each instance to correct substantial violations.

We overrule point of error four.

### Denial of Motion for New Trial

■ In point of error five, Tien Tao argues the trial court erred by denying its motion for new trial. It offered no argument or authority on this point of error, relying instead on its arguments in points of error one through four to support its contention. Absent an abuse of discretion, we will not overturn a ruling denying a motion for new

trial. *Jackson v. Van Winkle,* 660 S.W.2d 807, 809 (Tex.1983).

We hold the trial court did not abuse its discretion in overruling the motion for new trial.

We overrule point of error five.

### Attorneys' Fees

■ In points of error eight and nine, Tien Tao challenges the award of attorney's fees to Kingsbridge. In its original petition, Kingsbridge made a general allegation supporting its claim for attorney's fees. Tien Tao filed a general denial and did not specifically contest the fees. Nor did Tien Tao argue before the trial court that attorney's fees were improperly awarded. A trial court may award attorney's fees to the prevailing party in an action based on restrictive covenants. TEX.PROP.CODE ANN. § 5.006(a) (Vernon 1984). The trial court considers traditional factors such as time and labor. *Id.* We will not reverse absent an abuse of discretion. *Fonmeadow Property Owners' Ass'n, Inc. v. Franklin,* 817 S.W.2d 104, 105 (Tex.App.—Houston [1st Dist.] 1991, no writ). The record shows Kingsbridge's trial counsel testified concerning his hours and labor. His testimony was neither challenged nor controverted, and the amount awarded did not exceed the amount proved.

The evidence was sufficient to sustain the award of attorney's fees. The trial court did not abuse its discretion.

We overrule points of error eight and nine.

### Public Policy

In point of error seven, Tien Tao contends the judgment is against public policy and argues it violates the Religious Freedom Restoration Act and the federal and Texas Fair Housing Acts. In *City of Boerne v. Flores,* —— U.S. ——, ——, 117 S.Ct. 2157, ——, 138 L.Ed.2d 624 (1997), the Supreme Court declared the Religious Freedom Restoration Act unconstitutional. This portion of Tien Tao's argument is moot.

The federal Fair Housing Act[1] (FHA) and Texas FHA[2] make it unlawful to deny, or "otherwise make unavailable," a dwelling to any person because of religion. Enforcement of discriminatory zoning and deed restrictions may make housing otherwise unavailable. *See LeBlanc–Sternberg v. Fletcher*, 67 F.3d 412, 424 (2d Cir.1995). Tien Tao argues the purpose of Kingsbridge's suit was to restrict its members' religious freedom, and relies on *LeBlanc–Sternberg* to support its point. The restriction at issue in *LeBlanc–Sternberg*, however, was deliberately enacted as part of an express conspiracy to exclude the plaintiffs from the township. *Id.* at 431. Tien Tao did not allege or prove a conspiracy to enact or enforce these restrictions, which long predated Tien Tao's ownership.

■ The record makes it clear Kingsbridge sought to enforce its deed restrictions not to abridge Tien Tao's right to religious freedom, or to exclude Taoist believers from the community, but to abate a nuisance. The repercussions of Tien Tao's activities were indistinguishable from those that could ensue from any nonresidential use. The record contains evidence of a high volume of visitors, traffic congestion, noise, and eyesores on the property. These created a nuisance. That the nuisance stemmed from a gathering of a religious nature does not exclude it from coverage by the restrictions.

In urban areas without zoning, homeowners have increasingly come to rely upon use restrictions to maintain the residential nature of their neighborhoods. Although such restrictions may have an impact on the manner in which homeowners observe their religions, this does not automatically equate to religious discrimination. We hold the judgment was not against public policy.

We overrule point of error seven.

1. 42 U.S.C.A. § 3604(a) (West 1994).

2. TEX.PROP.CODE ANN. § 301.001 (Vernon Supp. 1997).

3. This case was briefed and argued before the Texas Rules of Appellate Procedure were amend-

### Constitutional Claims

In point of error six, Tien Tao argues the trial court erred in denying their motion for new trial because the judgment violates its constitutional rights to due process, freedom of religion, freedom of speech, and freedom of association. Kingsbridge argues Tien Tao waived its constitutional claims by failing to assert them earlier.

■ Tien Tao concedes it did not expressly plead constitutional defenses, but argues it was Kingsbridge's burden to prove the restrictions were constitutional and consistent with public policy. It cites no authority to support this contention. A party waives its constitutional claims by failing to timely assert them. *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex.1993). Unconstitutionality of a statute is an affirmative defense that must be timely pleaded. TEX.R.CIV.P. 94; *State v. Scott*, 460 S.W.2d 103, 107 (Tex. 1970).

Before the motion for new trial, Tien Tao never asked the trial court to rule on any constitutional defense. Thus, nothing is presented for review. TEX.R.APP.P. 52(a).[3]

■ Tien Tao contends there was fundamental error in the judgment. Fundamental error only exists in those rare instances in which the court lacks jurisdiction or the public interest is directly and adversely affected. *Wal–Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 328 (Tex.1993). The trial court's enforcement of these contractual deed restrictions does not fall into the boundaries of fundamental error, nor do other Texas cases dealing with deed restrictions address constitutional concerns when they are not raised by the parties. We hold Tien Tao has not preserved the issue of constitutionality for our review.

### Vagueness of the Judgment

■ Tien Tao also argues in point of error six that the judgment is void for vague-

ed effective September 1, 1997. Therefore, we have applied the rules in effect at the time this appeal was argued. *See Order Approving the Texas Rules of Appellate Procedure*, Misc. Docket No. 97–9134 (Tex. Aug. 15, 1997). All further references are to the pre-amendment rules.

ness in ordering that it "use the property in a manner consistent with the single family residential use provision set forth within the Declaration and cease and desist using the residence on the Property to house more than one family." The deed restrictions comprise a contract between the homeowner and the neighborhood association. Like any other owner, Tien Tao is bound by its contract. Because the language of the judgment tracks the language of that contract, we are not persuaded that the judgment is either unduly restrictive or vague.

Tien Tao further contends the judgment is vague because the trial court did not define "family"; it calls this a crucial deficiency. The deed restrictions do not define family. In the absence of a restriction requiring occupants to be related by blood or marriage, unrelated persons who live together are treated as "family" by various courts for the purpose of interpreting deed restrictions. *See, e.g., Collins,* 684 S.W.2d at 761–62 (use of home to house four unrelated mentally retarded adults not a violation of "single-family dwelling" use restriction). Here, however, the conflict between the parties lies not in how each defines "family" but in how they define the principal uses of the homes.

The judgment recognizes that the religious activities and purposes of Tien Tao have not been merely incidental to residential living; instead, these activities comprise the principal use of the two homes. In *Protestant Episcopal Church Council of the Diocese of Texas v. McKinney,* 339 S.W.2d 400, 404 (Tex.Civ.App.—Eastland 1960, writ ref'd), the court upheld a judgment enjoining the church council from operating a student center on the premises of a home near the University of Houston campus. In upholding the injunction, the court noted that, although two priests lived in the home, the other uses were the principal and primary uses for which the property was maintained. *Id.*

Here, as in *McKinney,* the residence of the priests has been incidental to the primary religious uses of these two homes.

By virtue of the designation "writ refused," the *McKinney* case is the equivalent of Texas Supreme Court authority.[4] The injunction upheld in *McKinney* prohibited the defendant from using its property "for other than residential purposes only," and "from using said premises for any purpose whatsoever except for residential purposes." 339 S.W.2d at 401.[5] This closely resembles the language used here. It is also the same language and conduct to which appellant agreed by taking the property subject to the restriction. We see no error in the judgment.

We overrule point of error six.

We affirm the judgment.

**4.** *See Hamilton v. Empire Gas & Fuel Co.,* 134 Tex. 377, 110 S.W.2d 561, 565–66 (1937).

**5.** The injunction here is narrower than in *McKinney.* While the trial court in *McKinney* found that attendance at all activities was "small," "not offensive to others," and had not lessened the "value, desirability or usefulness" of nearby

properties, it enjoined the defendant "from using said property as a student center, or for student recreation, coffee clubs, chapel services, receptions and meetings, or gatherings of students, or for any purpose of a like nature" in addition to requiring residential use only, and prohibiting any nonresidential use. 339 S.W.2d at 401.