TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00117-CV






David H. Quinn and Hui Yueh Quinn, Appellants



v.



Gregory D. Harris, Laura K. Harris, Marc A. Padovani, Gail M. Padovani, and
Southland Oaks Municipal Utility District, Appellees





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 95-12102, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING 







 Appellees Gregory and Laura Harris and Marc and Gail Padovani ("appellees")
filed suit against appellants David and Hui Yueh Quinn ("the Quinns") complaining of the latters'
violations of deed restrictions governing the parties' subdivision. After a bench trial, the trial
court rendered judgment against the Quinns, awarding appellees and intervenor Southland Oaks
Municipal Utility District (the "MUD") permanent injunctions, statutory damages, and attorney's
fees. The Quinns appealed. We will affirm the trial court judgment and attorney's fees awarded,
reverse the damages awarded, and modify the permanent injunctions issued.


BACKGROUND

 The Quinns and appellees live on Dandelion Trail in the Cherry Creek 9-A
subdivision, a small lot subdivision in southwest Austin. A Restated Declaration of Restrictions
("Declaration") encumbers lots in the subdivision with restrictive covenants. Part VII of the
Declaration, the enforcement paragraph, permits individual homeowners in the subdivision to
institute proceedings against any person violating the restrictions; parties may seek injunctive relief
and damages, and successful parties are entitled to attorney's fees. 

 Appellees filed suit against the Quinns to enforce the deed restrictions, alleging that
the Quinns violated the restrictions by: (1) attaching plywood boards and barbed wire to their
fence; (2) attaching "No Trespassing" signs to their fence; (3) leaving tires in their front yard; (4)
parking vehicles on the lawn; (5) pouring a cement addition to their concrete driveway; (6) placing
a hedge of bushes and plastic flowers beyond the front boundary of the house and refusing to mow
or trim the grass growing around the hedge; (7) purposefully killing the grass in their front and
side yards; (8) putting green paint only on the trim of their house facing the Harrises' home; (9)
scattering trash on the front and side of their house next to the Harrises'; and (10) leaving dirty
or bloody undergarments hanging on their clothesline for months. Appellees sought specific
performance of the deed restrictions, a temporary restraining order enjoining the Quinns from
violating the deed restrictions or threatening and harassing the appellees, a permanent injunction
for the same reasons, damages pursuant to Texas Property Code section 202.004(c), and attorney's
fees.

 The Quinns filed a counterclaim, seeking declaratory judgment that their actions
did not violate the deed restrictions but that the manner of enforcement of the restrictions against
them constituted unequal enforcement and violated equal protection of the law; the Quinns also
sought attorney's fees. 

 The case proceeded to a bench trial in December 1997. (1) The trial court rendered
judgment in favor of appellees and the MUD, granting a permanent injunction for the enforcement
of the deed restrictions against the Quinns, awarding $162,000 in damages pursuant to the Texas
Property Code, and awarding attorney's fees. (2) A separate permanent injunction also prohibited
the Quinns from harassing appellees. The Quinns received a take-nothing judgment on their
counterclaim, and they now bring six issues on appeal. In their first three issues, the Quinns
complain that the trial court erred in finding that they violated the deed restrictions, that appellees
waived the right to enforce the restrictions, and that the restrictions were arbitrarily enforced
against them. In their fourth and fifth issues, they contend that the trial court erroneously awarded
damages and that the permanent injunction is unenforceable. In their final issue, the Quinns argue
that the trial court erred in awarding appellees attorney's fees. 


DISCUSSION

Alleged Violations of the Deed Restrictions

 The Quinns argue in their first issue that because they received a variance from the
Architectural Control Committee (the "Committee") for any action that would otherwise constitute
a violation, the trial court erred in finding that they violated the deed restrictions. They contend
that any actions for which they did not seek or receive variances are matters of aesthetics not
covered by the deed restrictions. Appellees reply that the trial court's decision was not error
because the actions for which the Quinns did not receive variances constitute violations of the deed
restrictions. 

 Because restrictive covenants are construed as a matter of law, we review de novo
the trial court's finding that the Quinns violated the deed restrictions. See Candlelight Hills Civic
Ass'n v. Goodwin, 763 S.W.2d 474, 477 (Tex. App.--Houston [14th Dist.] 1988, writ denied);
Alexander Schroeder Lumber Co. v. Corona, 288 S.W.2d 829, 835 (Tex. Civ. App.--Galveston
1956, writ ref'd n.r.e.). The primary task in construing a restrictive covenant is to determine the
intent of the framers of the restrictive covenant. See Wilmoth v. Wilcox, 734 S.W.2d 656, 658
(Tex. 1987); Highlands Management Co., Inc. v. First Interstate Bank, 956 S.W.2d 749, 752
(Tex. App.--Houston [14th Dist.] 1997, pet. denied); Tien Tao Ass'n v. Kingsbridge Park
Community Ass'n, 953 S.W.2d 525, 528 (Tex. App.--Houston [1st Dist.] 1997, no pet.). The
Texas Property Code requires that a restrictive covenant "shall be liberally construed to give effect
to its purposes and intent." Tex. Prop. Code Ann. § 202.003(a) (West 1995). (3) If there is
"ambiguity or doubt as to the intent, the covenant is to be strictly construed against the party
seeking to enforce it in favor of the free and unrestricted use of the premises." Munson v. Milton,
948 S.W.2d 813, 816 (Tex. App.--San Antonio 1997, pet. denied). We note at the outset that the
Quinns have not alleged that the deed restrictions are ambiguous.

 We will first review those actions taken by the Quinns that are addressed by explicit
provisions in the deed restrictions. For example, the Quinns planted a hedge of bushes beyond
the front boundary of their house. Paragraph III.D. of the Declaration states: 


D. Fences. No fence, wall or hedge shall be erected, placed or altered on any lot
nearer to any street than the front wall of any house.


(Emphasis added.) The Quinns added a cement extension to their driveway and attached plywood
boards and barbed wire to their fence without first submitting their plans to the Committee. 
Paragraph III.E. states, in part:


E. Architectural Control. No building, wall, fence or any other improvement shall
be erected or placed on, nor shall any building, wall, fence or any other
improvement be altered, modified, added to or removed from any lot until the
construction plans and specifications thereof . . . have been approved in writing by
the Architectural Control Committee, hereinafter called "Committee." 



(Emphasis added.) The Quinns parked a vehicle on their front lawn. Paragraph III.G. states, in
part: 


G. Nuisances. . . . [N]o vehicle of any type shall be parked in the open on a
portion of any lot other than a private driveway constructed with the approval of
the Committee. 



(Emphasis added.) The Quinns attached several "No Trespassing" signs to their fence. Paragraph
III.I. states, in part: 


I. Signs. No signs of any kind shall be displayed for public view on any lot,
except one (1) sign of not more than five (5) square feet advertising the Property
for sale or rent . . . .



 Appellees instituted an enforcement proceeding against the Quinns, complaining
of the above violations of the deed restrictions, among others. Thereafter, Mr. Quinn sent his first
letter to the Committee requesting permission to keep the hedges planted beyond the front
boundary of his house, the boards attached to his fence, the cement addition to his driveway, and
the "No Trespassing" signs attached to his fence. (4) 

 The Committee allowed the Quinns' front yard hedges to remain so long as they
reached no higher than four feet, and allowed the Quinns to keep one "No Trespassing" sign
"provided it is placed in the fence walk gate." The Committee denied Mr. Quinn's request as to
the cement addition and the boards attached to his fence, stating that both items were "not allowed
and must be removed." The Quinns removed all but one of the "No Trespassing" signs as
requested by the Committee (although they did not place it in the location required by the
Committee); they also removed most of the boards attached to their fence but did not remove the
cement addition to their driveway. Mr. Quinn sent a second request to the Committee for
permission to keep the cement addition to his driveway the following year. The Committee
granted the request subject to the requirement that Mr. Quinn provide signed statements from fifty-one percent of the adjacent property owners that the addition was acceptable to them. Mr. Quinn
did not meet this requirement. A few months before trial, Mr. Quinn sent a third request for
permission to keep the cement addition, which was again conditionally granted provided four other
issues the Committee believed to be deed restriction violations were addressed. The Quinns did
not comply with the conditions.

 At the time of trial, the Quinns no longer parked on their front lawn, although it
is undisputed that they had done so in the past. They had not removed the cement addition nor
all of the wood attached to their fence. Furthermore, the Quinns left the plywood boards that they
had removed from the fence lying on the ground next to the fence line. (5) Paragraph III.L. of the
Declaration prohibits lot owners from storing trash or waste on their lots:


L. Garbage and Refuse. No lot shall be used or maintained as a dumping ground
for trash, garbage or other waste and the same shall not be kept, except in sanitary
containers. Each lot owner shall contract with an independent disposal service to
collect all garbage or other waste, if such service is not provided by the City of
Austin.



All of the actions described above were clearly prohibited by the deed restrictions and the
Committee did not grant the Quinns a variance to commit these actions. Therefore, we hold that
the trial court did not err in finding that the Quinns violated the deed restrictions.

 We must review the other alleged violations not explicitly addressed by specific
provisions in the deed restrictions because they are relevant to the Quinns' challenge to the breadth
of the permanent injunction issued against them. These alleged violations include using tires as
landscaping devices in the front yard, placing plastic pinwheel flowers in the front yard, killing
grass in the front yard with an herbicide, spray-painting green part of the house trim facing the
Harrises' home, and leaving dirty or bloody undergarments hanging on the clothesline for months. 
 In his first letter to the Committee, Mr. Quinn requested permission to use the tires
he had lying in his yard for landscaping. In a subsequent letter he requested permission to keep
the plastic pinwheel flowers in his yard. Both requests were denied. The Quinns did not remove
the plastic pinwheel flowers, and instead of removing the "exposed rubber tires" as the Committee
directed, the Quinns buried them in the front yard to facilitate the growth of bushes by "stopping
erosion" and "prevent[ing] evaporation" when the bushes were watered. The Quinns did not seek
permission to kill their grass on one side of their front yard, to spray paint green the part of their
house trim facing the Harrises' home, or to leave potentially offensive items of clothing on their
clothesline for months at a time. The Quinns contend, however, that they did not need variances
for any of these actions because the acts are matters of taste and aesthetics and do not rise to the
level of deed restriction violations. 

 Paragraph III.G., states, in part: 


G. Nuisances. No noxious or offensive activities shall be conducted upon any lot,
nor shall anything be done thereon which may be or may become an annoyance to
the neighborhood, or which is opposed to the purpose of these restrictions. . . . 



(Emphasis added.) The stated purposes behind the restrictions, set forth in the opening paragraph
of Part III are:


[T]o insure the best and highest use and the most appropriate development and
improvements of each lot . . .; to protect owners of lots against improper use of
surrounding lots; to preserve so far as practicable, the natural beauty of said
Property; to guard against the erection of poorly designed or proportioned
structures of improper or unsuitable materials; . . . to prevent haphazard and
inharmonious improvements of lots; . . . and in general to provide for development
of the highest quality to enhance the value of investments made by owners. 



(Emphasis added.)

 Construing the restrictive covenant liberally to give effect to its purpose, we hold
that the actions we have listed above violate the nuisance paragraph because the actions are clearly
"opposed to the purpose" of the deed restrictions, particularly those clauses we have emphasized. 
Accordingly, the trial court did not err in finding that these actions violated the deed restrictions. 
 The Quinns contend that if this Court finds that the actions for which they did not
seek or receive variances are violations of the deed restrictions, then they did not have notice of
how restrictive the deed restrictions were and the restrictions are unenforceable as a matter of law. 
The Quinns rely on Davis v. Huey, 620 S.W.2d 561 (Tex. 1981), in which the Texas Supreme
Court held that a property owner is "bound by only those restrictive covenants attaching to the
property of which he has actual or constructive notice." Id. at 565-66. The Quinns do not deny
that they had actual notice of the deed restrictions listed in the Declaration and knew that their lot
was subject to the restrictions; their complaint is limited to lack of notice of the breadth of the
deed restrictions.

 We believe it is clear that the Quinns' actual notice of the restrictions in the
Declaration gave them actual notice of the comprehensive nature of the deed restrictions. The
provisions discussed earlier in this opinion detail the Declaration's stance on the location of fences
and hedges, parking, signs, and trash, and require the owners to contract for garbage collection
and to submit to the Committee in writing plans for any lot alterations or improvements; other
sections of the deed restrictions deal with such matters as easements, minimum square footage,
construction of patios, percentage of cover and impervious cover per lot, number of off-street
parking spaces required per lot, masonry requirements, temporary structures, types of vehicles
permitted on lots, mineral operations, number of pets permitted per lot, and exterior antennae,
among other things. The restrictions also make clear that owners are required to seek approval
from the Committee for such things as deviating from the minimum square footage or masonry
requirements, constructing any new improvements to the lot or modifying any existing structures,
putting up additional signs on their property, or maintaining any type of exterior antenna or
satellite dish. (6) Furthermore, Paragraph VII of the Declaration gives the Committee the right to
enter an owner's lot and "repair, maintain and restore the lot" at the owner's expense "[i]n the
event the owner of any lot shall fail to maintain the premises . . . in a neat and orderly manner." 
(Emphasis added.) Although the Committee did not exercise this option in the Quinns' case, this
paragraph in the Declaration makes clear that the restrictive covenants are designed to assure the
neat and orderly maintenance of each lot. We believe the Declaration, read as a whole, puts the
Quinns on notice of the breadth of the restrictive covenants.

 The Quinns' complaint is similar to that of the appellants in Tien Tao Ass'n, Inc.
v. Kingsbridge Park Community Ass'n, Inc., 953 S.W.2d 525 (Tex. App.--Houston 1997, no
pet.). After listing a sampling of the deed restrictions at issue (similar to the type of restrictions
found in this case), the court of appeals noted the comprehensive nature of the deed restrictions:
"It is clear from the breadth of the restrictions that the subdivision is concerned with virtually
every aspect of the appearance and value of the neighborhood. It is not surprising that minutiae
such as lawn ornaments and decorations would be addressed by the committee . . . ." Tien Tao,
953 S.W.2d at 529. 

 We recognize, as the Quinns point out, that the deed restrictions in Tien Tao were 
more detailed than those in this case. For example, one of the deed restrictions in Tien Tao
dictated the specific colors the shutters of the homes in the subdivision could be painted. See id.
at 530. While the restrictions in this case may not require the Quinns' trim to be painted a specific
color, the restrictions certainly require that any exterior painting be done neatly and completely,
in a professional manner, in a color that matches the color of the house, with paint appropriate for
house exterior. In other words, the Quinns may not paint the trim of their home in a "haphazard
or inharmonious" way. 

 We hold that the trial court did not err in finding that the Quinns' actions violated
the deed restrictions and that the Quinns had notice of the comprehensiveness of the deed
restrictions; consequently, we rule against the Quinns on their first issue.


Waiver, Selective Enforcement, and Attorney's Fees

 In their second issue, the Quinns argue that appellees acquiesced to similar
violations by other members of the subdivision to the extent that the restrictions have been
abandoned or the right to enforce the restrictions has been waived. This argument is without
merit. The enforcement paragraph of the Declaration explicitly provides, "Failure to enforce any
covenant or restriction herein contained shall in no event be deemed a waiver of the right to do
so thereafter." The Quinn's second issue is overruled.

 The Quinns complain in their third issue that the enforcement of the deed
restrictions against them was arbitrary, capricious, and discriminatory. In their counterclaim at
trial, the Quinns alleged that the deed restrictions were selectively enforced against them, a
complaint similar to the issue before us now. The trial court ruled against the Quinns on the
selective enforcement claim. The Quinns do not complain that the trial court erred in ruling
against them on the selective enforcement claim, and appellees argue that this third issue presented
by the Quinns is an impermissible collateral attack on the judgment. Even assuming that the
Quinns have properly appealed their selective enforcement claim, however, they cannot prevail
on their claim of selective enforcement.

 There is no mandatory homeowners' association governing Cherry Creek that
polices the subdivision and enforces the deed restrictions. The chairperson of the Committee
explained at trial that the Committee does not enforce the deed restrictions, but rather acts as a
procedural body through which lot owners can request approval for projects on their property and
voice complaints about problems in the neighborhood. The only way the Committee becomes
aware of deed restriction violations is through complaints by members of the subdivision. When
it learns of a violation, the Committee notifies the owner that the owner's action violates the deed
restrictions and apparently relies on voluntary compliance; the Committee does not institute
litigation to enforce the restrictions. The Declaration provides for enforcement by either Milco
Properties, Inc. or a representative thereof, or individual homeowners. Because Milco Properties,
Inc. does not make it a practice to enforce the deed restrictions in the Cherry Creek 9-A
subdivision through litigation, individual homeowners are the only enforcers. 

 Appellees, the enforcers, produced some evidence that the enforcement action
against the Quinns was not arbitrary or capricious through the Harrises' testimony that the Quinns'
actions materially affected their enjoyment of their home. See Cox v. Melson-Fulsom, 956 S.W.2d
791, 794 (Tex. App.--Austin 1997, no pet.) ("[A] property owner is not precluded from enforcing
a deed restriction which materially affects her merely because she previously failed to complain
of a violation which did not materially affect her in the enjoyment of her property."). The
Padovanis testified that they joined the Harrises in the lawsuit because they believed the
appearance of the Quinns' lot negatively affected the value of the property in the neighborhood. 
Appellees and other members of the subdivision familiar with the Quinns' lot testified that it was
the worst looking lot in the neighborhood and that no other lot looked like the Quinns'. 
Furthermore, the Quinns produced no evidence that there were other deed restriction violations
in the subdivision. While they did introduce photographs of lots that they believed violated the
deed restrictions, they did not introduce any evidence regarding whether the owners of those lots
had received permission from the Committee for the alleged violations. There is no evidence that
the deed restrictions were arbitrarily enforced against the Quinns. The Quinns' third issue is
overruled.

 In their sixth issue, the Quinns argue that because the trial court erred in rendering
judgment for appellees and the MUD, the trial court also erred in awarding them attorney's fees. 
We have ruled against the Quinns on their first three issues, holding that the deed restrictions are
enforceable against them and that the trial court properly determined that the Quinns violated the
deed restrictions. The enforcement provision of the Declaration provides that a successful party
to an enforcement action may recover attorney's fees. The Texas Water Code permits MUDs to
collect attorney's fees for successful enforcement actions. See Tex. Water Code Ann. § 54.237(c)
(West Supp. 1999). Therefore, there was no error in the trial court's award of attorney's fees to
appellees. The Quinns' sixth issue is overruled.


Damages

 Texas Property Code section 202.004(c) states: "A court may assess civil damages
for the violation of a restrictive covenant in an amount not to exceed $200 for each day of the
violation." Tex. Prop. Code Ann. § 202.004(c) (West 1995). Pursuant to section 202.004(c), the
trial court awarded appellees $162,000, representing $200 for each day the deed restrictions were
violated from September 29, 1995 through December 10, 1997. The Quinns complain in their
fourth issue that the damage award to the MUD and to appellees, individual homeowners in the
subdivision, was improper because section 202.004(c) is limited to enforcement actions brought
by a property owners' association. (7) We agree. 

 Statutes are construed as a matter of law and we review the trial court's construction
of section 202.004(c) de novo. See Johnson v. City of Fort Worth, 774 S.W.2d 653, 656 (Tex.
1989). Appellees argue that nothing in subsection (c) limits the discretionary damage award to
property owners' associations. (8) We note that individual provisions of a statute must be read in the
context of the entire statute in order to determine the legislature's intent. See
Bridgestone/Firestone, Inc. v. Glyn-Jones, 878 S.W.2d 132, 133 (Tex. 1994); Barr v. Bernhard,
562 S.W.2d 844, 849 (Tex. 1978). "[O]ne provision will not be given a meaning out of harmony
or inconsistent with other provisions, although it might be susceptible to such a construction if
standing alone." Barr, 562 S.W.2d at 849. When section 202.004(c) is read in context with
sections 202.004(a) and (b), it is evident that property owners' associations or property owners'
representatives were the intended recipients of the discretionary damage award provided by section
202.004(c). Section 202.004(a) establishes that a presumption of reasonableness should be applied
to "[a]n exercise of discretionary authority by a property owner's association or other
representative designated by an owner of real property . . . unless the court determines by a
preponderance of the evidence that the exercise of discretionary authority was arbitrary,
capricious, or discriminatory." Tex. Prop. Code Ann. § 202.004(a) (West 1995) (emphasis
added). Section 202.004(b) states that "[a] property owners' association or other representative
designated by an owner of real property may initiate, defend, or intervene" in litigation concerning
the enforcement of restrictive covenants. Id. § 202.004(b) (emphasis added). These two
subsections clearly contemplate enforcement actions instituted by property owners' associations
or owners' representatives. 

 If appellees' interpretation of section 202.004(c) were followed, each individual
homeowner in a subdivision could institute a separate enforcement proceeding against a lot owner
violating a restrictive covenant, and each individual homeowner could recover up to $200 per day
from the time she filed suit until the judgment was signed. We do not believe the legislature
intended this result. Consequently, we hold that subsection 202.004(c), permitting a court in its
discretion to award up to $200 a day for a violation of a restrictive covenant, applies only to
homeowners' associations or owners' representatives. Neither appellees nor the MUD acted on
behalf of a homeowners' association and neither presented evidence that they acted in a
representative capacity for the owners in the Cherry Creek 9-A subdivision. Accordingly, we
reverse the damage award to appellees and the MUD (9) and render judgment that they take nothing
in damages against the Quinns.


Permanent Injunction

 The Quinns argue in their fifth issue that the permanent injunctions awarded against
them by the trial court are not supported by the evidence and are unenforceable. There were two
permanent injunctions issued in the trial court's judgment. One is a "mandatory and prohibitive"
permanent injunction that requires the Quinns to "desist and refrain" from violating the deed
restrictions and to take steps to bring their property into compliance with the deed restrictions. 
There are eighteen commands listed in the mandatory and prohibitive injunction corresponding to
the Quinns' deed restriction violations; for example, the Quinns are prohibited from retaining tires
in their yard and are required to sod their yard with grass. The other permanent injunction is
prohibitive and commands the Quinns to "desist and refrain from making threatening or harassing
gestures, comments or actions toward" appellees or their families. This second injunction lists
nine ways in which the Quinns were alleged to have harassed the appellees and prohibits them
from engaging in that conduct; for example, the Quinns are prohibited from swearing or spitting
at appellees, threatening to kill appellees, or tailgating appellees in a vehicle.

 We will first review the permanent injunction relating to the deed restrictions.
Appellate review of a district court's order granting or denying a permanent injunction is strictly
limited to a determination of whether there has been a clear abuse of discretion by the trial court. 
See Risk Managers Int'l, Inc. v. State, 858 S.W.2d 567, 569-70 (Tex. App.--Austin 1993, writ
denied); Priest v. Texas Animal Health Comm'n, 780 S.W.2d 874, 875-76 (Tex. App.--Dallas
1989, no writ). The general rule governing the issuance of a permanent injunction requires the
trial court to find: (1) the existence of a wrongful act; (2) the existence of imminent harm; (3) the
existence of irreparable injury; and (4) the absence of an adequate remedy at law. See Priest, 780
S.W.2d at 874. When an injunction is sought to enforce a restrictive covenant, however, there
is an exception to this general rule: "[P]roof that actual damage will be sustained or irreparable
injury be suffered need not be offered." Guajardo v. Neece, 758 S.W.2d 696, 698 (Tex.
App.--Fort Worth 1988, no writ); see also Protestant Episcopal Church Council v. McKinney,
339 S.W.2d 400, 403 (Tex. Civ. App.--Eastland 1960, writ ref'd); 43A C.J.S. Injunctions § 100
(1978). Instead, the party seeking the injunction must show a distinct or substantial breach of the
restrictive covenant. See Guajardo, 758 S.W.2d at 698; McKinney, 339 S.W.2d at 403-04; see
also Tien Tao, 953 S.W.2d at 529-30 (a party must substantially violate a deed restriction before
the trial court may issue a permanent injunction).

 The Quinns contend that they did not substantially violate the deed restrictions;
therefore, the trial court abused its discretion in issuing the permanent injunction. We have
described the evidence relating to the numerous ways in which the Quinns breached several deed
restrictions. Based on this evidence, we find the Quinns' contention that they did not substantially
breach the deed restrictions to be without merit. The trial court did not abuse its discretion in
issuing a permanent injunction; however, we agree with the Quinns that some of the language in
the provisions of the permanent injunction exceeds or is inconsistent with the requirements of the
deed restrictions. In the interest of judicial economy, we believe we can modify its provisions
consistent with the trial court's order and the deed restrictions. Therefore, the first part of the
permanent injunction, requiring the Quinns to "desist and refrain from violating the Restrictions
in any manner, including, but not limited to" the ten listed provisions is modified as to provisions
four, five, six, seven, and eight as follows:


4. placing or retaining plastic flowers in their front or side yards or in any
location visible to the Plaintiffs anyone viewing their home from anywhere
on Dandelion Trail, Piney Creek Bend, or Cretys Cove; 


5. placing or retaining broken or abandoned items or items not used regularly
furniture, yard equipment, or coolers in their front or side yards;


6. placing or retaining garbage cans, garbage or refuse in their front or side
yards or placing or retaining garbage cans in any location other than in front
of or inside their garage, except on garbage collection days when the
garbage cans may be placed at the curb;


7. placing or retaining yard maintenance equipment or yard maintenance
supplies along their fence line in a disorderly manner;


8. attaching or retaining barbed wire, signs, boards or other objects to their
fence or property except for one (1) "No Trespassing" sign which may be
placed in the fence walk gate; 



 The second part of the injunction, commanding the Quinns to "undertake the
following actions within 10 days after this judgment is final" is modified as follows:


 1. Keep all garbage cans in front of or inside their garage at all times except
for garbage collection days when the garbage cans may be placed at their
curb;


 2. Sod their entire front and side yards with St. Augustine grass or a
comparable grass and maintain the sod, grass and front and side yards by
watering and mowing same in a manner which will cause the grass to grow
and flourish a grass consistent with the live grass remaining on their lot,
and maintain the grass in a neat and orderly manner;


* * * 



 7. Fix their car alarm so that it does not sound unnecessarily, learn how to
operate the car alarm, or, failing these commands, disable the car alarm
ceases being a nuisance to the neighborhood by frequently sounding in non-emergency situations; and


 8. Ensure that all sounds, including televisions, music, chanting and
telephones played or operated by the Defendants can be heard only by the
Defendants within their own house after 10:00 p.m. or before 8:00 a.m.
any day of the week. If windows are open, no sounds, including those
from televisions, music, chanting or telephones, should be audible to the
Plaintiffs after 10:00 p.m. or before 8:00 a.m. during any day of the week. 



 We find that the permanent injunction relating to the restrictive covenants, as
modified by this opinion, is supported by the evidence and is enforceable against the Quinns. 

 The Quinns also complain that the permanent injunction prohibiting them from
harassing appellees is unenforceable because it does not meet the requirements for issuing a
permanent injunction. They specifically argue that appellees failed to show that they would suffer
an irreparable injury or that there was no adequate remedy at law should the injunction prohibiting
the Quinns from harassing appellees not issue. The Quinns contend that if appellees feel legal
action should be taken to fend off the alleged harassment, the proper remedy would be to file
criminal charges against the Quinns. We note in response that injunctions designed to prevent
harassment are permissible. See Kramer v. Downey, 680 S.W.2d 524, 525 (Tex. App.--Dallas
1984, writ ref'd n.r.e.) ("[The] right to be left alone from unwanted attention may be protected,
in a proper case, by injunctive relief."). Appellees presented evidence at trial that the Quinns,
particularly Mrs. Quinn, harassed appellees; for example, Mrs. Quinn cursed at Mrs. Padovani
in front of the Padovani's young daughter, "tailgated" Mrs. Padovani in her vehicle on two
occasions, made obscene gestures at Mrs. Harris in front of her two young sons, cursed at Mr.
Harris and his mother, threatened to kill Mr. Harris, and so on. Mrs. Padovani and Mrs. Harris
both testified that they fear going into their front or back yards or walking around the
neighborhood because of the potential for a confrontation with Mrs. Quinn. Based on these facts,
we hold that the trial court did not abuse its discretion by issuing a permanent injunction against
harassment in this case. 

 While we believe the evidence supports the injunction against harassment, we will
delete provisions eight and nine, relating to noise caused by television, radios, chanting, music,
or car alarms, because those items are sufficiently covered by the modified injunction prohibiting
the Quinns from violating the deed restrictions. The injunction prohibiting the Quinns from
harassing appellees, as modified, is supported by the evidence and is enforceable. Accordingly,
we overrule the Quinns' fifth issue. 


CONCLUSION

 We hold that the trial court did not err in determining that the Quinns violated the
restrictive covenants governing the Cherry Creek 9-A subdivision and in awarding appellees and
the MUD attorney's fees, and did not abuse its discretion in issuing permanent injunctions to
enforce the deed restrictions and prohibit the Quinns from harassing appellees. The trial court did
err, however, in concluding that section 202.004(a) permits individual homeowners and the MUD
to be awarded the discretionary damages provided for in that section. Accordingly, we affirm the
permanent injunctions issued as modified by this opinion and we affirm the award of attorney's
fees; we reverse the damages awarded and render judgment that appellees and the MUD take
nothing in damages against the Quinns.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and Powers*

Affirmed in Part; Reversed and Rendered in Part

Filed: March 11, 1999

Do Not Publish



















* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1. The MUD intervened October 28, 1997 to enforce the restrictions and recover damages. 
See Tex. Water Code Ann. § 54.237(b) (West Supp. 1999) (authorizing municipal utility districts
to initiate, defend, or intervene in litigation when enforcement of property restrictions is
"necessary to sustain taxable property values in the district.").
2. The trial court awarded the MUD one-third of the damages recovered for the period of
October 28, 1997 through December 10, 1997. Because appellees and the MUD share the same
attorney, attorney's fees were not separated by the judgment. 
3. While the Property Code requires liberal construction of a restrictive covenant's language
to ascertain its purpose and intent, Texas common law, prior to the enactment of this section of
the Property Code, called for restrictive covenants to be construed in favor of the free and
unrestricted use of the premises and against the party seeking to enforce the covenants. See
Wilmoth v. Wilcox, 734 S.W.2d 656, 657 (Tex. 1987). There seems to be some confusion as to
how to construe restrictive covenants in light of the two standards. For example, cases decided
after section 202.003 went into effect have noted that there is no conflict between Wilmoth and
section 202.003(a), without providing an analysis of how the standards fit together. See Ashcreek
Homeowner's Ass'n v. Smith, 902 S.W.2d 586, 588-89 (Tex. App.--Houston [1st Dist.] 1995,
no writ); Crispin v. Paragon Homes, Inc., 888 S.W.2d 78, 81 n.1 (Tex. App.--Houston [1st
Dist.] 1994, writ denied); see also Tien Tao Ass'n v. Kingsbridge Park Community Ass'n, 953
S.W.2d 525, 528 (Tex. App.--Houston [1st Dist.] 1997, no pet.) (noting that a restrictive
covenant should be construed to give effect to its purpose, without referencing Wilmoth's
instruction that a restrictive covenant should be construed strictly or the Property Code's
instruction that a restrictive covenant should be construed liberally). Other cases seem to discard
the concept of strict construction of restrictive covenants in light of section 202.003(a). See
Highlands Management Co., Inc. v. First Interstate Bank, 956 S.W.2d 749, 752 (Tex.
App.--Houston [14th Dist.] 1997, pet. denied). The Texas Supreme Court did not address
whether section 202.003(a) supplants Wilmoth when that issue was raised by the respondents in
Pilarcik v. Emmons, 966 S.W.2d 474, 478 (Tex. 1998). The Fourth Court of Appeals has
employed both standards to review a restrictive covenant, finding that the covenant should be
liberally construed to determine the framers' intent, and if there is any ambiguity as to that intent,
the covenant should then be strictly construed in favor of the free and unrestricted use of the
premises. See Munson v. Milton, 948 S.W.2d 813, 816 (Tex. App.--San Antonio 1997, pet.
denied). We believe the Fourth Court of Appeals has found the proper balance between the two
standards that does not conflict with precedent or the Texas Property Code. 
4. Paragraph III.E. of the Declaration states, "Anything herein to the contrary notwithstanding,
the Committee is hereby authorized, at its sole discretion, to waive any requirements relating to
carports, dwelling size, masonry requirements, fences and setbacks . . . ." (Emphasis added.) 
This authorization presumably includes the requirement that owners must seek permission for any
changes to their lots prior to undertaking those alterations. Therefore, even though the Quinns
sought the variances after they had made the additions to their lot, they would be in compliance
with the restrictions if the Committee granted the variances. 
5. Mr. Quinn testified at trial that the plywood boards had been removed from the ground next
to their fence line shortly before trial.
6. We note that during the course of this lawsuit, the Quinns requested and received permission
to erect a satellite dish in their back yard.
7. Appellees complain that the Quinns did not object at trial to the use of the Texas Property
Code to assess damages. The Quinns did not request findings of fact or conclusions of law. "In
a nonjury trial, where no findings of fact or conclusions of law are filed or requested, it is implied
that the trial court made all the necessary findings to support its judgment." Roberson v.
Robinson, 768 S.W.2d 280, 281 (Tex. 1989). When the reporter's record is brought forward on
appeal, these implied findings may be challenged by legal sufficiency points. See id. (referring
to the "statement of facts"). The Quinns complain that the trial court improperly awarded
damages under section 202.004(c) and that there is no evidence supporting the trial court's award
of damages against them. With this complaint, they challenge both the trial court's implied
conclusion of law that section 202.004(c) applies in this case and the trial court's implied finding
of fact that damages were warranted in this case.
8. Neither appellees nor appellants cite any case law addressing whether section 202.004(c)
permits individual homeowners to recover under the statute. The only published case found by
the Court in which damages were assessed under section 202.004(c) involved a property owners'
association. See Dickerson v. DeBarbieras, 964 S.W.2d 680 (Tex. App.--Houston [14th Dist.]
1998, no pet.).
9. The Quinns also complain under this issue that the MUD did not properly intervene in this
lawsuit; however, the Quinns did not appeal this issue in an independent point of error or object
to the MUD's intervention at trial. The issue is therefore waived and we will not address it. 


. Wilcox, 734 S.W.2d 656, 657 (Tex. 1987). There seems to be some confusion as to
how to construe restrictive covenants in light of the two standards. For example, cases decided
after section 202.003 went into effect have noted that there is no conflict between Wilmoth and
section 202.003(a), without providing an analysis of how the standards fit together. See Ashcreek
Homeowner's Ass'n v. Smith, 902 S.W.2d 586, 588-89 (Tex. App.--Houston [1st Dist.] 1995,
no writ); Crispin v. Paragon Homes, Inc., 888 S.W.2d 78, 81 n.1 (Tex. App.--Houston [1st
Dist.] 1994, writ denied); see also Tien Tao Ass'n v. Kingsbridge Park Community Ass'n, 953
S.W.2d 525, 528 (Tex. App.--Houston [1st Dist.] 1997, no pet.) (noting that a restrictive
covenant should be construed to give effect to its purpose, without referencing Wilmoth's
instruction that a restrictive covenant should be construed strictly or the Property Code's
instruction that a restrictive covenant should be construed liberally). Other cases seem to discard
the concept of strict construction of restrictive covenants in light of section 202.003(a). See
Highlands Management Co., Inc. v. First Interstate Bank, 956 S.W.2d 749, 752 (Tex.
App.--Houston [14th Dist.] 1997, pet. denied). The Texas Supreme Court did not address
whether section 202.003(a) supplants Wilmoth when that issue was raised by the respondents in
Pilarcik v. Emmons, 966 S.W.2d 474, 478 (Tex. 1998). The Fourth Court of Appeals has
employed both standards to review a restrictive covenant, finding that the covenant should be
liberally construed to determine the framers' intent, and if there is any ambiguity as to that intent,
the covenant should then be strictly construed in favor of the free and unrestricted use of the
premises. See Munson v. Milton, 948 S.W.2d 813, 816 (Tex. App.--San Antonio 1997, pet.
denied). We believe the Fourth Court of Appeals has found the proper balance between the two
standards that does not conflict with precedent or the Texas Property Code. 
4. Paragraph III.E. of the Declaration states, "Anything herein to the contrary notwithstanding,
the Committee is hereby authorized, at its sole discretion, to waive any requirements relating to
carports, dwelling size, masonry requirements, fences and setbacks . . . ." (Emphasis added.) 
This authorization presumably includes the requirement that owners must seek permission for any
changes to their lots prior to undertaking those alterations. Therefore, even though the Quinns
sought the variances after they had made the additions to their lot, they would be in compliance
with the restrictions if the Committee granted the variances. 
5. Mr. Quinn testified at trial that the plywood boards had been removed from the ground next
to their fence line shortly before trial.
6. We note that during the course of this lawsuit, the Quinns requested and received permission
to erect a satellite dish in their back yard.
7. Appellees complain that the Quinns did not object at trial to the use of the Texas Property
Code to assess damages. The Quinns did not request findings of fact or conclusions of law. "In
a nonjury trial, where no findings of fact or conclusions of law are filed or requested, it is implied
that the trial court made all the necessary findings to support its judgment." Roberson v.
Robinson, 768 S.W.2d 280, 281 (Tex. 1989). When the reporter's record is brought forward on
appeal, these implied findings may be challenged by legal sufficiency points. See id. (referring
to the "statement of facts"). The Quinns complain that the trial court improperly awarded
damages under section 202.004(c) and that there is no evidence supporting the trial court's award
of damages against them. With this complaint, they challenge